Ernest KNOX and Gwendolyn Hansberry, Plaintiffs–Appellees.

v.

José O. SALINAS, Commissioner of Motor Vehicles, Defendant–Appellant,

City of New Haven, Defendant.
Docket No. 98–9469.

United States Court of Appeals, Second Circuit.

Argued July 12, 1999.
Decided Sept. 21, 1999.

Joanne S. Faulkner, New Haven, CT, for Plaintiffs–Appellees.

Cornelius F. Tuohy, Assistant Attorney General of Connecticut (Richard Blumenthal, Attorney General, Priscilla J. Green, Assistant Attorney General, of counsel), for Defendant–Appellant.

Before: WINTER, Chief Judge, WALKER, and CABRANES, Circuit Judges.

PER CURIAM:

This appeal presents for review a permanent injunction entered by the United States District Court for the District of Connecticut (Peter C. Dorsey, *Judge*)

against Connecticut's Commissioner of Motor Vehicles, defendant-appellant José O. Salinas (the "Commissioner"). Stating that recently adopted regulations "d[id] not go far enough to meet the due process concerns raised by plaintiffs," the District Court entered an injunction that prescribes detailed procedures for notifying owners when their motor vehicles are towed as well as when a towing company intends to sell an unclaimed vehicle to recover towing and storage costs. We hold that the District Court's findings are insufficient to permit appropriate appellate review. Accordingly, we vacate the injunction and remand for an articulation of findings consistent with this opinion.

## I.

Plaintiffs Ernest Knox ("Knox") and Gwendolyn Hansberry ("Hansberry") are Connecticut residents who claim that, without notice to them, their motor vehicles were towed from the streets of New Haven and ultimately sold by private towing companies in order to recover towing and storage costs. In 1993, Knox and Hansberry filed separate complaints against the private towers, the Commissioner, and the City of New Haven (the "City"), asserting claims, pursuant to 42 U.S.C. § 1983, for deprivation of property without due process of law. Knox moved for certification, pursuant to Fed.R.Civ.P. 23(b)(2), of a plaintiff class composed of "all New Haven residents who, on and after February 8, 1990, had their vehicles towed by [the private operator that towed Knox's car] at the direction of the New Haven Police Department, and who were

thereafter deprived of title to their vehicles in conjunction with the Department of Motor Vehicles, without prior notice or opportunity to be heard." Absent opposition, the District Court granted the motion pursuant to Local Rule 9(a)(1).[1]

Plaintiffs' complaints alleged that the towing practice in New Haven was as follows. Plaintiffs claimed that, first, the New Haven Police Department would direct private towing companies to tow and then store vehicles that were illegally parked or had otherwise come under police suspicion. According to plaintiffs, neither the City nor the towing companies would notify vehicle owners that their cars had been towed, or afford these owners any opportunity to be heard on the legality of the tow itself. Plaintiffs alleged that most vehicles not claimed after fifteen days would be valued by the tower at less than $500 and then sold, again without notice, for unpaid towing and storage charges. According to plaintiffs, the towers would rely on Conn. Gen.Stat. § 14–150, which applied only to vehicles towed because they are abandoned, unregistered or a "menace to traffic."[2] To effect a transfer of title, the towers allegedly would complete a form affidavit certifying that the vehicle was abandoned, that the vehicle was worth less than $500, and that the owner of the vehicle was unknown. Plaintiffs further alleged that, based only on this affidavit, the State Department of Motor Vehicles ("DMV") would "rubber-stamp" the sale by issuing a new certificate of title to the purchaser. According to plaintiffs, the DMV allowed private companies to sell some 25,000 vehicles[3] per year in roughly this fashion.

---

1. Local Rule 9(a)(1) provides:

 Unless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion.... Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion.

 D. Conn. R. 9(a)(1).

2. The statute provided that, if a vehicle was worth $500 or less, it could be sold without advertisement or public auction, and the towing company could retain all of the sale's proceeds. The statute also required that prior notice of intent to sell be provided to the vehicle owner, "if known." Conn. Gen.Stat. § 14–150(g).

3. The record is unclear as to whether this figure was meant to reflect the sale of vehicles

The District Court never determined whether these allegations were true. Instead it simply entered default judgments against the private towing companies, and then denied plaintiffs' motions for summary judgment against the City and the Commissioner. In a March 31, 1995 ruling on Knox's motion for summary judgment, the Court noted that an individual cannot be deprived of his automobile without due process of law, and conducted the three-factor "balancing test" set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[4] It concluded that individuals have an important interest in ownership of an automobile, that "lack of notice multiplies the risk of erroneous deprivation," and that the burden of mailing a notice to the owner, who can easily be located through the DMV, is relatively minimal. Accordingly, the Court stated: "[D]ue process is found to require reasonable notice and the opportunity for post-deprivation grievance procedure before any towed car may be sold to recoup towing and storage costs." The Court denied summary judgment, however, because it concluded that there was a genuine issue as to whether applicable city ordinances satisfied these due process requirements, and as to whether the private tower had actually provided Knox with notice.

On April 4, 1996, the Court consolidated the Knox and Hansberry cases, and on January 30, 1997, plaintiffs moved for a permanent injunction against both the City and the Commissioner. After holding a conference with the parties, the District Court denied plaintiffs' motion, without prejudice, to allow time for the Commis-

sioner to consider amendment of the DMV regulations in a manner that would moot the requested relief. On June 5, 1997, plaintiffs, dissatisfied with the Commissioner's proposed amendments, renewed their motion for a permanent injunction. The Court, on September 12, 1997, heard lengthy oral argument at which it considered, point by point, plaintiffs' specific objections to the proposed regulations. Plaintiffs had presented these objections to the Court in a letter which, in the Court's view, reflected all of plaintiffs' "problems" with the proposed regulations. Transcript of 9/12/97 Hearing at 40, 56. In the course of oral argument, the parties appeared to reach agreement, with the Court's approval, on each of these issues, and the motion for an injunction was again denied without prejudice.

The current regulations went into effect on December 8, 1997. They provide that, when a motor vehicle is towed by order of a police officer or traffic authority (as opposed to, for example, an owner of private property on which the vehicle is illegally parked), the owner and all lienholders of record must be notified by the towing company within 48 hours of the tow. Conn. Agencies Regs. § 14–307–2. Upon a towing company's request, DMV must "immediately" provide registration and title information necessary to complete the notice form. *Id.* § 14–307–2(b). The notice must state (1) that the vehicle was towed, (2) the location of storage, (3) that the vehicle may be sold by the tower or storage facility after 45 days or, if the market value is $500 or less, after 15 days, and (4) that the owner has a right to contest the validity of the tow by requesting a hearing.[5] *See id.*

---

statewide or within the City of New Haven alone.

4. In *Mathews*, the Supreme Court stated:
[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute pro-

cedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
424 U.S. at 335, 96 S.Ct. 893.

5. Nothing in the regulation explicitly requires the notice to explain that a vehicle may not be sold while an application for a hearing is pending.

(incorporating notice requirements of Conn. Gen.Stat. § 14–150(e)). Market value is defined as "the average trade-in value, appearing in the current month's issue of the N.A.D.A. Official Used Car Guide, Eastern Edition." *Id.* § 14–307–1(4).

The new regulations require that, upon receiving an application for a hearing, the hearing officer must promptly schedule a hearing, at which the vehicle owner and the authority responsible for the decision to tow may present any relevant evidence to show that the tow was or was not conducted in accordance with the statute. *See id.* § 14–150–3; *see also* Conn. Gen. Stat. § 14–150(e) (providing for appointment of a hearing officer). The hearing officer must, with reasonable dispatch, provide both parties with a written decision, including a statement of reasons. *See* Conn. Agencies Regs. § 14–150–4.

Unless the owner notifies the tower or storage facility that a hearing application is pending, the vehicle may be sold after 45 days or, if the market value is $500 or less, after 15 days. *See id.* § 14–307–5(a) (incorporating requirements of Conn. Gen. Stat. § 14–150(g)). The tower or storage facility intending to sell the vehicle must notify the owner at least five days before the date of sale. *See id.* On a DMV form completed and signed under penalty of false statement, the putative seller must provide the DMV with notice of intent to sell, including evidence of notice to the owner and, if the market value of the vehicle exceeds $500, a statement of value. *See id.* §§ 14–307–5, –8. "The commissioner may require that proof of such stated value be provided, except that if no market value exists, a reasonable estimate of current market value may be provided together with a statement of the facts on which such estimate is based." *Id.* § 14–307–8. Finally, notice of the pending sale must be provided by the seller to all lienholders of record. *See id.* § 14–307–6.

If the market value does not exceed $500, the vehicle may be sold "for storage and towing charges owed thereon." Conn. Gen.Stat. § 14–150(g), *incorporated by reference in* Conn. Agencies Regs. § 14–307–5. If the value exceeds $500, then the vehicle must be sold at an advertised public auction, and the proceeds (in excess of towing charges, storage charges, and costs of sale) paid to the owner or, if unclaimed after one year, to the state. *See* Conn. Gen.Stat. § 14–150(h). Regardless of market value, the seller must provide the DMV with a notice of completed sale including the sale price, the towing, storage, and other charges, the identity of the buyer, and information concerning any advertisement of public auction. *See* Conn. Agencies Regs. § 14–150–5, *incorporated by reference in id.* § 14–307–5(b). On a form issued by the DMV, the "seller must provide the buyer with an "affidavit of compliance." *Id.* § 14–307–5(b). "DMV shall not register or title any such motor vehicle sold by a tower or storage facility unless the application for registration and title is accompanied by the duly executed 'Affidavit of Compliance'." *Id.*

Nothing in the record suggests that, in adopting the December 8, 1997 regulations, the DMV did not fully implement the agreements previously reached at the September 1997 hearing before the District Court. In fact, the DMV seems to have incorporated the District Court's recommendations that, for example, the regulations should (1) apply broadly to all "nonconsensual tows," Transcript of 9/12/97 Hearing at 66, (2) use the term "market value" instead of "book value," *id.* at 51–61, (3) require notice to lienholders[6] after a vehicle has been towed, *see id.* at 80, and (4) explicitly state that the DMV may not issue a new certificate of title without an

---

**6.** The September 1997 hearing included substantial discussion about whether a lienholder should receive a notice of tow, or only a notice of any intent to sell. *See* Transcript of 9/12/97 Hearing, at 68–80. We note, however, that the plaintiff class includes only vehicle owners, and that the notice to lienholders therefore is not before us.

affidavit of compliance from the seller, *see id.* at 83–87. Nevertheless, on December 17, 1997, plaintiffs again renewed their motion for a permanent injunction, based on specific objections that had not been asserted before or during the September 1997 hearing. After defendants filed responsive papers, the District Court, on March 17, 1998, denied defendants' request for a hearing and determined that the motion would be decided based on the written record.

On September 29, 1998, the District Court, without conducting an evidentiary hearing or discussing the *Mathews v. Eldridge* factors relevant to the permanent injunction proposed by plaintiffs, adopted the requested injunction virtually wholesale. After setting forth plaintiffs' objections to the new regulations, the Court's opinion provided this reasoning:

> Though defendants are commended for voluntarily proposing and ensuring that the subject regulations were enacted, the regulations as they stand now do not go far enough to meet the due process concerns raised by plaintiffs and extensively discussed by all parties and the Court throughout the drawn out proceedings in this case. Thus, in accordance with the Ruling on Summary Judgement [sic] of March 31, 1995, where it was recognized that due process requires reasonable notice and the opportunity for post-deprivation grievance procedures before any towed car may be sold, the following [injunction] is hereby ordered....

The highly detailed, eight-paragraph injunction entered by the District Court is largely the same as the order proposed by plaintiffs on December 17, 1997, which in turn is nearly identical to an order proposed by plaintiffs two-and-one-half years earlier. As a result, the regulations and the injunction appear to overlap substan-

tially. The main provision enjoins the Commissioner from registering or "titling" a towed vehicle "without documentary proof" that:

> (1) within three (3) days after the tow, notice was sent to the most recent registered owner of the vehicle, by first class and certified mail to the address last provided to the Commissioner by said owner, stating the location of the vehicle and the methods for redeeming it; (2) not less than five (5) business days before any sale, transfer or other disposition of the vehicle, notice of the proposed sale or other disposition was sent to the address last provided to the Commissioner by the most recent registered owner of the vehicle, and lienholder, if any, by both first class and certified mail; and (3) not less than ten (10) days after the sale or other disposition, notice was mailed to the most recent registered owner of the vehicle at the last address provided by said owner to the Commissioner providing an accounting to the owner for the difference between the amount owed for towing and storage and the sale price of the vehicle.

In addition, the injunction directs the Commissioner, *inter alia*, to (1) issue a blank affidavit of compliance to a seller only upon receipt of certain completed notice forms, (2) warn its licensees that falsification of notice documents will be grounds for suspension or revocation of their licenses, and (3) allow aggrieved vehicle owners to seek compensation out of surety bonds that state law requires such licensees to furnish.

The Commissioner, who opposes at least some of the injunction's terms, filed this timely appeal on October 29, 1998.[7]

## II.

■ We review the District Court's entry of a permanent injunction for abuse of

---

7. The injunction separately requires the City to notify owners when their vehicles are towed, and to "require towers to provide[ ] a $50,000 bond with corporate surety or obtain professional insurance to answer for damage, destruction, or disposition of any towed vehi-

cle if the procedures of this Order are violated." These terms also are nearly identical to those found in the proposed orders submitted by plaintiffs. Although the proposed bond requirement had been dismissed by the District Court as "a negotiating ploy" at the

discretion, which may be found where the Court, in issuing the injunction, relied on clearly erroneous findings of fact or an error of law. *See, e.g., General Media Communications, Inc. v. Cohen,* 131 F.3d 273, 278 (2d Cir.1997), *cert. denied,* ―― U.S. ――, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998).

 Pursuant to Fed.R.Civ.P. 65(d), an order entering an injunction "shall set forth the reasons for its issuance." Similarly, Fed.R.Civ.P. 52(a) requires special findings of fact and conclusions of law in support of a permanent injunction. *See* Fed.R.Civ.P. 52(a) ("In all actions tried upon the facts and without a jury . . ., the court shall find the facts specially and state separately its conclusions of law thereon . . .; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."); *Securities & Exchange Comm'n v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir.1975) ("We find it plain that the entry of a permanent injunction without appropriate findings violates the command of Fed. R.Civ.P. 52(a)."). This requirement helps ensure "due care" by the district court, and it "aids the appellate court in understanding the ground or basis for the trial court's decision." *Davis v. New York City Hous. Auth.,* 166 F.3d 432, 435 (2d Cir. 1999).

In this case, the March 20, 1995 summary judgment ruling sets forth the District Court's reasoning in support of its conclusion that due process requirements are violated when a towed car is sold without reasonable notice and an opportunity to be heard. However, in later concluding that the DMV's regulations of December 1997 failed to provide due process of law, the District Court offered little more than the conclusory statement that "the regula-

tions as they stand now do not go far enough to meet the due process concerns raised by plaintiffs." The order's recitation of plaintiffs' objections to the regulations, like the terms of the injunction itself, provides some insight into the perceived procedural deficiencies, but the opinion is devoid of factual findings or legal analysis explaining whether, why, or how the District Court determined—without any evidentiary hearing—that the absent procedures are necessary for compliance with constitutional due process requirements. The record of the September 1997 hearing is similarly unenlightening, because, as discussed above, that hearing was devoted to a review of plaintiffs' initial objections to the Commissioner's new regulations, all of which seem to have been resolved by the DMV's final, December 1997 regulations.

In sum, the District Court's statements fail to meet the requirements of Fed. R.Civ.P. 52(a) and 65(d), because they do not adequately reveal the basis of the Court's decision. *See United States v. Vulpis,* 961 F.2d 368, 371 (2d Cir.1992) ("A district court's statement is sufficient to meet the requirements of Rule 52(a) if it informs the court of appeals of the basis of the decision, thereby permitting appropriate appellate review."). Although we may nevertheless proceed "if we are able to discern enough solid facts from the record to permit us to render a decision," *Davis,* 166 F.3d at 436, our independent search of the record reveals nothing of relevance other than the rulings and the hearing transcript discussed above. Accordingly, we conclude that appellate review would be inappropriate, and we vacate the injunction.

 In the interests of judicial economy, we also offer the following observations about the nature and scope of any injunction that might issue should the District Court identify specific procedural deficiencies of constitutional proportions. "[T]he court's discretion to frame equitable

September 1997 hearing, *see* Transcript of 9/12/97 Hearing, at 36, the City has not appealed.

relief is limited by considerations of federalism," and in crafting a permanent injunction, "[f]ederal courts must take care to exercise a proper respect for the integrity and function of local government institutions." *Schwartz v. Dolan,* 86 F.3d 315, 319 (2d Cir.1996) (alteration in original) (internal quotation marks omitted); *see also Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("It is for the courts to remedy past or imminent official interference with [constitutional rights]; it is for the political branches of the State and Federal Governments to manage [public institutions] in such fashion that official interference with [constitutional rights] will not occur."). We have acknowledged that a judicial finding of a constitutional defect may easily give rise to a temptation "to right the wrong by assuming control of the entire system in which the offensive condition exists and prescribing a new system deemed to meet constitutional requirements." *Schwartz,* 86 F.3d at 319 (internal quotation marks omitted). However, a court should first "give the state a reasonable opportunity to remedy a constitutional deficiency, imposing upon it a court-devised solution only if the state plan proves to be unfeasible or inadequate for the purpose." *Id.*

In this case, the District Court acted with admirable restraint when, after determining that reasonable notice and an opportunity to be heard are required, it twice denied plaintiffs' motions for a permanent injunction, in order to give the Commissioner time to adopt new regulations. *Cf. Tedeschi v. Blackwood,* 410 F.Supp. 34, 46 (D.Conn.1976) (noting, also in the context of tow and sale procedures, that "[i]t is not necessary for this court to attempt to define exactly what procedure the State must follow"). In fact, the Court devoted substantial time and effort to the process of identifying ways in which plaintiffs' concerns could be resolved, not through an injunction, but by agreement of the parties.

■ After the DMV's regulations were adopted, however, the District Court entered the type of detailed injunction—effectively *rewriting* the Commissioner's regulations—that is appropriate only as a last resort. *See Schwartz,* 86 F.3d at 319 (vacating injunction because "the court gave detailed instructions" for the remedy of constitutionally deficient notices); *cf. Lewis,* 518 U.S. at 347, 116 S.Ct. 2174 (invalidating injunction that "specified in minute detail" the operations of prison libraries). On remand, if the District Court, upon a review of the regulations and the record and after such additional hearings as it deems appropriate, finds specific constitutional defects warranting an injunction, it should instead enter an order enjoining the Commissioner from "titling" or registering towed vehicles until he amends the regulations to remedy the clearly identified defects.

### III.

The permanent injunction entered by the District Court is vacated, and the cause is remanded for further proceedings consistent with this opinion, including, as appropriate, an articulation of findings.