07-1726-cv
Alleyne v. New York State Educ. Dep't

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: February 5, 2008)                          Decided: February 14, 2008)

Docket No.  07-1726-cv

_____

JEANETTE ALLEYNE, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF T.J., ALLEN
DATOUSH, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF T.D., KIM DATOUSH,
INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF T.D., LINDA DOHERTY, INDIVIDUALLY
AND AS NEXT FRIEND AND GUARDIAN OF M.D., SUSAN HANDON, INDIVIDUALLY AND AS NEXT
FRIEND AND GUARDIAN OF C.C., LESLIE JOYNER, INDIVIDUALLY AND AS NEXT FRIEND AND
GUARDIAN OF D.J., LASHARON JOYNER, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF
C.J., MITCHELL SHEAR, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF S.S., MARCIA
SHEAR, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF S.S., AND THE JUDGE
ROTENBERG EDUCATIONAL CENTER, INC.,

*Plaintiffs-Appellees*,

— v .—

NEW YORK STATE EDUCATION DEPARTMENT, RICHARD P. MILLS, IN HIS CAPACITY AS
COMMISSIONER OF EDUCATION OF THE NEW YORK STATE EDUCATION DEPARTMENT AND THE
NEW YORK STATE BOARD OF REGENTS,

*Defendants-Appellants*.

_____

Before:        NEWMAN, WINTER, AND B.D. PARKER, *Circuit Judges*.

_____

Appeal from an order of the United States District Court for the Northern District of New
York (Sharpe, *J.*), preliminarily enjoining the implementation of N.Y. Comp. Codes R. & Regs.

1

tit. 8, § 200.22(f)(4), which relates to the treatment of children with special needs.

VACATED AND REMANDED.

———————————————

MICHAEL P. FLAMMIA, Eckert Seamans Cherin & Mellott, LLC, Boston, MA (Jeffrey J. Sherrin, O'Connell and Aronowitz, P.C., Albany, NY, *on the brief*), *for Plaintiffs-Appellees*.

JULIE S. MERESON, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General, *on the brief*) *for* Andrew M. Cuomo, Attorney General of the State of New York, Albany, NY.

———————————————

PER CURIAM:

Defendants-Appellants, who are various New York State educational entities, appeal an order of the United States District Court for the Northern District of New York (Sharpe, *J.*), preliminarily enjoining the implementation of N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22(f)(4), which purports to regulate certain treatments administered to special needs students. We vacate the injunction and remand to the district court to allow it to make the required findings as to irreparable harm and likelihood of success on the merits.

## BACKGROUND

Since the 1970s, Appellant New York State Educational Department ("NYSED") has referred special needs students from New York to out-of-state facilities for specialized treatment and education. The NYSED makes these referrals pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, which creates a statutory right to a "free

2

appropriate public education" for disabled students. 20 U.S.C. § 1412(a)(1)(A).

Over the years, hundreds of New York students have been sent to the Judge Rotenberg Educational Center ("JRC"), a non-profit residential facility in Canton, Massachusetts. JRC is licensed, approved, and regulated by various government agencies, including the Massachusetts Department of Education and the Massachusetts Department of Mental Retardation. JRC emphasizes behavioral therapies rather than medication in addressing its students' disorders. The school initially employs positive reinforcement and non-intrusive methods, which are effective for about half of JRC students. If these methods are unsuccessful, JRC may supplement a student's treatment program with "aversive interventions" (also referred to by the parties as "aversive therapies," "aversive treatments," and simply "aversives"), including skin shocks, "contingent" food programs, and physical restraints.

Parents and guardians must consent in writing to the use of aversive therapies. The therapies must also be provided for in the student's individualized education program ("IEP"), which is a key element of the IDEA. 20 U.S.C. § 1414(d). Pursuant to Massachusetts regulations, a Human Rights Committee and a Peer Review Committee must then approve the aversive interventions for each student. Additionally, an independent physician must examine each student to ascertain if there are any medical reasons not to use aversive therapies, and a judge of the Massachusetts Probate Court must, after hearings, approve the therapies.

According to Appellees, who are the parents and guardians of New York JRC students, each student's behavioral treatment program, including the use of aversives, is designed and supervised by "fully qualified doctoral-level clinicians." However, the aversive therapies are

3

typically administered (*e.g.*, the skin shocks are actually applied) by JRC "direct care staff." These staff members must participate in and pass a two-week training program designed by JRC's professional clinicians. JRC also uses experienced staff as "monitors," either in person or via a live-feed video system, to follow the direct care staff. The direct care staff do not have licenses or certificates that specifically qualify them to administer aversive treatments.

In 2006, apparently in response to a suit brought against the NYSED by a parent of a former JRC student, the NYSED dramatically increased its scrutiny of JRC and, in particular, its use of aversive interventions. Although it had positively assessed JRC's facilities, policies, and practices as recently as November 2005, the NYSED released a report critical of JRC in June 2006. Effective June 23, 2006, the NYSED promulgated an emergency regulation that generally banned the use of aversive interventions, with child-specific exceptions under limited circumstances. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22. Starting on June 23, JRC complied with the new regulation, restricting the use and availability of aversive interventions for many students.

Appellees, proceeding individually and on behalf of their children, sued Appellants and moved for injunctive relief in August 2006, alleging that Section 200.22 violates state and federal education laws (including the IDEA), as well as Appellees' substantive and procedural due process and equal protection rights. On September 8, 2006, the district court preliminarily enjoined the enforcement of two provisions of the new regulation against the student plaintiffs,

ensuring that those students could continue to receive aversive treatments.[1]  Noting Appellants'

authority under the IDEA to set standards governing special education and related services, the

court emphasized that it was providing "narrowly tailored relief."

Later that month, Appellees raised a concern that, subsequent to the injunction, some

students' IEP's were being revised without parental consent or simply not revised for the new

school year, the effect of which was to deprive those students of aversive therapies.  On October

2, 2006, the court extended the preliminary injunction to newly added student plaintiffs and

enjoined the enforcement of a third provision of the regulation.[2]

Effective January 15, 2007, Appellants revised the regulation on an emergency basis, and

included a requirement that "aversive interventions shall be administered by appropriately

licensed professionals or certified special education teachers in accordance with Part 80 of this

Title and sections 200.6 and 200.7 of this Part or under the direct supervision and direct

observation of such staff."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22(f)(4) ("Section

(f)(4)").  No New York or Massachusetts law had previously required these specific

qualifications.  Appellees informed the district court by letter about the amended regulation and

requested an extension of the injunction to cover Section (f)(4).  Appellees stated that while they

believed that JRC employed only qualified individuals to administer the therapies, JRC's

---

[1]The two provisions were § 200.22(f)(2)(vi) (limiting the use of aversives to aggressive and self-injurious behavior) and § 200.22(f)(2)(ix) (prohibiting the combined use of aversive interventions with mechanical restraints).

[2]The enjoined provision was § 200.22(e)(1)(ii), requiring the submission of an application to the Commissioner of Education concerning the use of aversive interventions by October 1, 2006.

5

compliance with Section (f)(4) depended on the State's interpretation of the provision. Appellees also brought to the court's attention the "logistical challenges" that a strict interpretation of the new provision could pose. For example, Appellees assert that it would be virtually impossible for JRC staff members to continue applying aversive treatments immediately after the occurrence of each problem behavior if they had to be directly observed by a licensed or certified professional. Additionally, JRC would need to hire significantly more "licensed" or "certified" professionals to comply with the revised regulation.

At a hearing on February 5, 2007, the district court expressed its concern that the revised regulation essentially accomplished "what the preliminary injunction forbids" - suspending the use of aversive therapies. Appellants argued that they had not yet assessed JRC's compliance with or enforced Section (f)(4), and that even if the new requirements took effect, JRC would have time to work towards compliance before being removed from the list of approved schools to which the NYSED refers students. Appellants' counsel also observed that even in a worst case scenario, Appellees would have five days to object to the loss of its approved status.[3]

The district court indicated that it would extend the injunction to cover Section (f)(4) "[f]or the same reasons that I issued the original TRO," and entered an order to that effect on

---

[3]8 N.Y.C.R.R. § 200.7(a)(3)(iv) provides that "[s]chools may be removed from the approved list five business days after written notice by the commissioner indicating that there is a clear and present danger to the health or safety of students attending the school, and listing the dangerous conditions at the school, including, but not limited to, evidence that an approved private school is using aversive interventions to reduce or eliminate maladaptive behaviors of students without a child-specific exception provided pursuant to section 200.22(e) of this Part or that an approved private school is using aversive interventions in a manner inconsistent with the standards as established in section 200.22(f) of this Part."

February 8, 2007. The order states that "for the reasons set forth in the Court's September 8, 2006 Memorandum-Decision and Order, the State Education Defendants are preliminarily enjoined from the enforcement of 8 N.Y.C.R.R. § 200.22(f)(4) . . . as to the Plaintiffs in this action." The State defendants appeal this order.

## DISCUSSION

We review the grant of a preliminary injunction by a district court for abuse of discretion. *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 484 (2d Cir. 2007); *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision - though not necessarily the product of a legal error or a clearly erroneous factual finding - cannot be located within the range of permissible decisions." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 88-89 (2d Cir. 2006) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)) (footnotes omitted). A district court may enter a preliminary injunction staying "government action taken in the public interest pursuant to a statutory or regulatory scheme" only when the moving party has demonstrated that he will suffer irreparable injury, and there is "a likelihood that he will succeed on the merits of his claim." *Id.* at 89 (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)); *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995).

Appellants argue that the district court abused its discretion in enjoining the enforcement of Section (f)(4) without making findings as to Appellees' irreparable harm or likelihood of success. Appellants contend further that no such findings could have been made, since the

district court received no evidence or factual showings as to Section (f)(4). We agree that the district court's failure to make findings relating to irreparable harm or likelihood of success on the merits seriously impedes appellate review and warrants vacating the injunction.

The Federal Rules of Civil Procedure provide that "[i]n granting or refusing an interlocutory injunction, the court must [] state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2). Additionally, "[e]very order granting an injunction and every restraining order must state the reasons why it issued." Fed. R. Civ. P. 65(d)(A). These requirements help "ensure due care by the district court, and . . . aid[s] the appellate court in understanding the ground or basis for the trial court's decision." *Knox v. Salinas*, 193 F.3d 123, 129 (2d Cir. 1999) (citation and internal quotation marks omitted); *see also N.A.A.C.P. v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir. 1995) ("A principal purpose of [Rule 52(a)] is to allow appellate review of the district court's decision."). We have not hesitated, on numerous occasions, to invalidate injunctions for lack of adequate findings. *E.g.*, *Knox*, 193 F.3d at 129; *Town of East Haven*, 70 F.3d at 225; *Romer v. Green Point Sav. Bank*, 27 F.3d 12, 16 (2d Cir. 1994); *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir. 1991); *Small v. Kiley*, 567 F.2d 164, 164 (2d Cir. 1977).

The district court did not sufficiently articulate its basis for enjoining Section (f)(4), precluding meaningful appellate review of the order. The February 8, 2007 order contains no findings, and even looking back to the original September 8, 2006 order, to which the February 8 injunction refers, it is difficult to identify specific findings as to harm or likelihood of success. The September 8 injunction alludes only to the fact that "some parents have shouldered the

unenviable task of caring for severely challenged children for years, believe in the efficacy of aversives as applied to their children, and are now caught in the middle." As to likelihood of success, the order observes correctly that Appellees need not meet the more stringent "clear" or "substantial" standard, but does not make any findings as to whether Appellees are "likely" to succeed on the merits of their claims.

In the absence of help from the district court, we may mine the record for facts that support injunctive relief. *See Freedom Holdings, Inc.*, 408 F.3d 112, 114 (2d Cir. 2005) (citation and internal quotation marks omitted) (when reviewing a preliminary injunction, we "may affirm on any ground supported by the record"); *Hsu ex rel. Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 848 n.1 (2d Cir. 1996) (where the district court did not make any independent factual determinations, examining the record and asking "whether injunctive relief is warranted based on the undisputed facts"). The record provides substantial support for a finding of harm to the student plaintiffs if aversive treatments are suspended, particularly the numerous affidavits submitted by the parents that attest to the positive effects of aversives and the adverse consequences to their children of suspending those treatments. However, the record is less helpful on the specific harms threatened by the licensing requirements of Section (f)(4), and silent as to Appellees' likelihood of success on the merits.

Remand to the district court for further findings is appropriate where, as here, "the record is insufficiently clear to permit us to determine the basis for the district court's decision." *Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir. 2003) (citation omitted); *see also Town of East Haven*, 70 F.3d at 223 ("Our normal practice is to vacate the order and remand for specific

9

findings, 'if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below.'") (quoting *Tekkno Labs.*, 933 F.2d at 1097). We are confident that, especially given the harms that could result if the student plaintiffs' behavioral treatments are interrupted, the deficiencies in the district court's order may be expeditiously remedied.[4] We acknowledge the pressure placed upon the district court by a swiftly passed emergency regulation that the court suspected had been enacted for the purpose of circumventing its earlier injunction. In the end, however, an inadequately documented preliminary injunction burdens the reviewing court and delays the progress of the case towards an anticipated trial, where the serious issues at play in this case may be finally resolved.

## CONCLUSION

We VACATE the district court's order of February 8, 2007, enjoining the enforcement of § 200.22(f)(4), and REMAND for findings as to irreparable harm and likelihood of success on the merits.

---

[4]In a letter to this Court dated February 6, 2008, Appellants' counsel indicated that "[t]he [NYSED] does not expect to invoke § 200.7(a)(3)(iv) to enforce compliance with § 200.22(f)(4)." Furthermore, "even if the department decided to issue a determination of noncompliance with subdivision (f)(4) and seek to remove JRC from the approved list, the students' services would continue uninterrupted until each student is transferred to an appropriate placement." The district court would have the authority to ensure that Appellants take no other action against JRC on the basis of Section (f)(4) that would disrupt provision of aversives to the student plaintiffs for sixty days from receipt of our mandate, while the court makes the appropriate findings to support a preliminary injunction. The district court may also require Appellants not to change the placement or treatment of the student plaintiffs without providing at least thirty days' notice, in the absence of a true emergency situation. Finally, the district court has the authority, of course, to combine a preliminary injunction hearing with a trial on the merits and make appropriate findings of fact and conclusions of law. Fed. R. Civ. P. 65(a)(2).