*Really Good Stuff, LLC v. BAP Investors, L.C.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of June, two thousand twenty.

PRESENT: JOHN M. WALKER, JR.,
GERARD E. LYNCH,
RICHARD J. SULLIVAN,
*Circuit Judges.*

------------------------------------------------------------------

REALLY GOOD STUFF, LLC,

*Plaintiff-Counter-Defendant-Appellee,*

v.                                                         No. 19-3395-cv

BAP INVESTORS, L.C., CREATIVE KIDS FAR
EAST INC.,

*Defendants-Counter-Claimants-Appellants,*

CREATIVE KIDS, INC.,

*Defendant.*

```
-------------------------------------------------------------------
```

FOR APPELLANTS:                    BRIAN A. COMACK (Douglas A.
                                   Miro, *on the brief*), Amster, Rothstein
                                   & Ebenstein LLP, New York, NY.

FOR APPELLEE:                      EDWARD F. MALUF (Katherine E.
                                   Perrelli, Jeremy A. Schachter, *on the
                                   brief*), Seyfarth Shaw LLP, New York,
                                   NY.

Appeal from a judgment of the United States District Court for the Southern

District of New York (Louis L. Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is

**AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** with

respect to the scope of the preliminary injunction.

Plaintiff-Counter-Defendant-Appellee Really Good Stuff, LLC ("RGS")

brought suit against Defendants-Counter-Claimants-Appellants BAP Investors,

L.C. ("BAP") and Creative Kids Far East Inc. (together, "Appellants"), alleging

claims including (1) trademark infringement and unfair competition under the

Lanham Act, 15 U.S.C. § 1114 and § 1125, and New York common law, (2) patent

infringement under 35 U.S.C. § 271(a), and (3) breach of contract under Colorado

law related to the sale and distribution of various science-based educational toys.

The district court (Stanton, *J.*) granted in part and denied in part RGS's motions for a preliminary injunction and to dismiss BAP's counterclaims, and denied BAP's cross-motion for a preliminary injunction, determining that RGS and BAP each owned some of the marks at issue. On appeal, Appellants contend that the district court abused its discretion in ruling on the cross-motions for preliminary injunctions and erred in dismissing BAP's counterclaims. We agree that the district court abused its discretion only with respect to the scope of the injunction, which barred Appellants "from selling any unit of any product that RGS sought to purchase . . . regardless of whether RGS sought to purchase some or all units from BAP's remaining inventory of that product." Special App'x at 34. We therefore vacate the preliminary injunction solely to the extent that it enjoins the sale of units (beyond the numbers RGS sought to purchase) of any product lines from which RGS sought to purchase less than all of the inventory, and remand for a reexamination of the proper scope of the injunction. We affirm the district court's judgment in all other respects. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

3

## I. The District Court Properly Granted RGS's Motion for a Preliminary Injunction, But the Injunction Is Overly Broad

"[A] party seeking a preliminary injunction must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks omitted). The moving party must also "show that a preliminary injunction is in the public interest." *Id.* "We review the grant of a preliminary injunction by a district court for abuse of discretion." *Alleyne v. N.Y. State Educ. Dep't*, 516 F.3d 96, 100 (2d Cir. 2008).

### A. RGS Is Likely to Succeed on the Merits of its Claims

Under the Lanham Act and New York common law, a plaintiff demonstrates a likelihood of success on the merits of a trademark infringement or unfair competition claim "by showing both [(1)] a legal, exclusive right to the mark, and [(2)] a likelihood that customers will be confused as to the source of the infringing product."[1] *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270

---

[1] An unfair competition claim under New York common law also requires a showing of bad faith.

4

(2d Cir. 1999); *see also Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982).  Under Colorado law,[2] a plaintiff asserting a claim of breach of contract must prove "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

The district court did not abuse its discretion by concluding that RGS is likely to succeed on the merits of its trademark infringement, unfair competition, and breach of contract claims.  First, RGS is likely to succeed on its trademark infringement and unfair competition claims because it has a legal, exclusive right to the marks at issue and there is a likelihood of consumer confusion from BAP's continued unauthorized use of the marks.

Appellants primarily contend that BAP, not RGS, owns the "Insta-Snow" design mark.  However, the district court did not err in concluding that RGS owns the "Insta-Snow" word and design marks based on the language of the Second Amended Exclusive Licensing Agreement and its Addendum (together, the

---

*See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995).

[2] The parties agree that Colorado contract law governs the parties' contract claims.

"License Agreement") and Request for Consent to Assignment Letter (the "Consent Letter"). Having carefully reviewed both documents, we agree with the district court that nothing in the Consent Letter altered the definition of Steve Spangler Inc. ("SSI") Trademarks in the License Agreement or otherwise transferred ownership of the "Insta-Snow" design mark to BAP. The district court's determination was based on the plain language of the relevant contracts between the parties and appropriately construed those documents.

Nor did the district court abuse its discretion when it concluded that BAP's continued unauthorized use of the marks in question was likely to cause consumer confusion. Where an ex-licensee continues to use a mark after its license expires, a strong likelihood of consumer confusion arises. *See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986). Therefore, because BAP is a previous licensee that continued to use RGS's marks after the expiration of the License Agreement, the district court properly concluded that there was a likelihood of consumer confusion for the identical marks – "Insta-Snow," "Steve Spangler Science," "Sick Science," "Energy Stick," and "Geyser Tube."

If marks are not exactly the same, however, such as RGS's "Insta-Snow"

6

mark and BAP's "Instant Amazing Snow" mark, the determination of likelihood of confusion is based on the multifactor balancing test established by *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). In *Polaroid*, we explained that:

> Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Id.* at 495. Here, the district court determined that these factors, on balance, weighed in favor of finding a likelihood of consumer confusion between the "Insta-Snow" and "Instant Amazing Snow" marks. Once again, this conclusion was not an abuse of discretion. The district court identified the correct law, carefully applied it to the facts, and reasonably balanced the relevant factors to find a likelihood of confusion.

Second, the district court did not abuse its discretion in determining that RGS is likely to succeed on its breach of contract claims because the License Agreement is a valid contract, RGS performed under it, BAP breached it by refusing to sell to RGS any fewer than all of the remaining copies of the SSI

7

products at issue that RGS sought to purchase, and RGS was harmed by BAP's breach. Appellants' assertion that BAP did not breach the License Agreement because the plain language required RGS to purchase all or none of the remaining copies of the SSI products in BAP's inventory, but not some number in between, is unpersuasive. The district court began with the text of the License Agreement, reasonably concluded that it was ambiguous, and therefore turned to the parties' course of conduct to clarify it, as allowed under Colorado law. The district court noted that on four occasions when an SSI product was discontinued during the term of the License Agreement, SSI exercised its right and purchased *some* units of the discontinued product remaining in BAP's inventory, but not *all* of them. The district court therefore reasonably concluded that RGS had established a likelihood of success on the merits of its breach of contract claims because BAP breached the contract by refusing to sell the products at issue to RGS.

B.  RGS Will Be Irreparably Harmed in the Absence of a Preliminary Injunction

Irreparable harm is "harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010). The loss of reputation and goodwill constitutes irreparable harm. *See Register.com, Inc. v.*

8

*Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). As we have explained, "[w]hen in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic." *Church of Scientology*, 794 F.2d at 42.

The district court found that "SSI invested time and effort into developing its products and marks," and that "[a]s the current owner of those trademarks, RGS will suffer the irreparable harm of losing control over the reputation and goodwill that Steve Spangler Science products have gained if BAP is not enjoined from using those marks, or confusingly similar imitations of the marks, when selling and advertising products." Special App'x at 20–21. It further determined that the "loss of goodwill is not calculable and cannot be remedied by royalty payments or other monetary damages." *Id.* at 21. These findings are fully supported by the proper case law, and the district court did not abuse its discretion in finding that BAP's unauthorized use of the marks at issue will cause irreparable harm.

## C. The Balance of the Hardships and the Public Interest Weigh in Favor of RGS

The district court first concluded that RGS's hardships outweighed those of Appellants. The court explained that whereas RGS faced the continued irreparable harm of loss of goodwill and control over its reputation absent

9

injunctive relief, Appellants would merely be prevented from using RGS's marks and confusingly similar imitations of those marks and from selling the SSI products that RGS sought to purchase from BAP at the expiration of the License Agreement. *Id.* at 22. The court also determined that Appellants' businesses would not be severely impacted because they could still sell other products that did not bear the infringing marks and SSI products that RGS did not offer to purchase at the expiration of the License Agreement. *Id.* at 22–23. The district court's determination that RGS would suffer the greater hardship is a quintessential exercise of discretion, and BAP does not establish that the court abused that discretion.

The district court also found that the public interest favored RGS because "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Id.* at 23 (internal quotation marks omitted). BAP proffers no persuasive reasoning that this conclusion was an abuse of discretion.

D. The Preliminary Injunction's Scope is Overbroad

Appellants further contend that the district court abused its discretion when it (1) prohibited BAP from selling any of its remaining inventory in specified

10

product lines that RGS sought to purchase; and (2) "inexplicably enjoined BAP from using the 'Energy Stick' and 'Geyser Tube' design marks, even though it found that BAP owns these designs." Appellants' Br. at 46.

We agree with BAP that the district court's injunction – which prohibited BAP from selling *any* of its remaining inventory from 22 different SSI product lines – is overly broad.[3] Upon expiration of the License Agreement, BAP had the right to sell to third parties the units of leftover SSI products that RGS did not seek to purchase. RGS sought to purchase the entire remaining inventory for six different SSI product lines; it also requested a smaller portion of the remaining inventory for 16 other SSI product lines. Though the district court properly enjoined BAP from selling any units from the former category – after all, RGS was entitled to the entire inventory of such products – it abused its discretion by enjoining BAP from selling *any* units from the latter group of products, since the License Agreement provided that BAP would be permitted to sell the units that RGS did not elect to purchase. Accordingly, we vacate the preliminary injunction solely to the extent that it enjoins the sale of units (beyond the numbers RGS sought to purchase) of

---

[3] We note that, to the extent that any of these product lines contained only products that bore the "Super Slime" mark and did not contain products bearing marks owned by RGS, the district court did not enjoin BAP from selling these product lines.

11

any product lines from which RGS sought to purchase less than all of the inventory, and remand to the district court for a reexamination of the particular product lines covered by the injunction.

Appellants also insist that the district court issued a self-contradictory order when it determined, on the one hand, that BAP owns the "Energy Stick" and "Geyser Tube" design marks, only to then enjoin BAP from using those very marks. We reject this characterization of the district court's decision. Instead, the district court found that BAP "owns all rights pertaining to the *packaging* of the Energy Stick and Geyser Tube products," which is not inconsistent with the court's conclusion that RGS retained ownership of those products' word and design marks. Special App'x at 26 (emphasis added). The language of the Consent Letter explicitly provides that BAP exclusively owns all rights pertaining to packaging "[o]ther than the SSI IP," App'x at 337, and the district court correctly determined that the SSI IP included both word and design marks.

## II. The District Court Did Not Abuse its Discretion by Denying BAP's Cross-Motion for a Preliminary Injunction

BAP maintains that the district court's finding that RGS owns the "Insta-Snow" design mark was error, and therefore that the district court abused its discretion by relying on that finding to deny BAP's cross-motion for a preliminary

12

injunction premised on its purported ownership of that design mark. As explained above, the district court did not abuse its discretion in determining that RGS owns the "Insta-Snow" design mark. Therefore, BAP is unable to demonstrate a likelihood of success on the merits of its unfair competition and breach of contract counterclaims with respect to that mark. Accordingly, the district court did not abuse its discretion in denying BAP's cross-motion for a preliminary injunction.

III. The District Court Did Not Err in Dismissing BAP's Counterclaims

Finally, Appellants assert that the district court erred in dismissing BAP's counterclaims for unfair competition (Counts I and V) and breach of contract (Count XIII) based on the "Insta-Snow" design mark, and its counterclaim for cancellation of RGS's "Insta-Snow" word mark registration (U.S. Registration No. 2,928,946) on the basis of genericness (Count XV). "We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

BAP's counterclaims for unfair competition and breach of contract rely

13

solely on BAP's purported ownership of the "Insta-Snow" design mark. But as explained above, the License Agreement clearly provides that RGS owns "any design incorporating" the "Insta-Snow" word mark, and there is nothing in the Consent Letter that altered that arrangement. *See* App'x at 323. Therefore, because BAP cannot establish that it owns the "Insta-Snow" design mark – a necessary element of its unfair competition and breach of contract counterclaims – the district court properly dismissed those claims.

As for BAP's registration cancellation counterclaim, we agree with the district court that the "Insta-Snow" word mark is not generic. Because "Insta-Snow" is registered with the U.S. Patent and Trademark Office, BAP bears the burden of overcoming the presumption that the mark is *not* generic. *See Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980). "Generic marks are those consisting of words identifying the relevant category of goods or services." *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 385 (2d Cir. 2005). BAP relies on evidence that the phrase "Instant Snow" has been used by "at least nine" third-party "fake plastic snow toy products" to prove that "Insta-Snow" is a generic word mark. Appellants' Br. at 52. But even viewing this evidence in the light most favorable to Appellants, we fail to see how competitors' use of a

14

different term proves anything about the genericness of the distinct phrase "Insta-Snow." BAP fails to satisfy its burden, and we therefore conclude that the district court properly dismissed BAP's cancellation claim.

\* \* \*

We have considered Appellants' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this order in connection with the scope of the injunction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court