79 F.3d 331
 151 L.R.R.M. (BNA) 2946, 131 Lab.Cas. P 11,536
 Peter B. HOFFMAN, Regional Director of Region 34 of the
National Labor Relations Board, for and on behalf
of the National Labor Relations Board,
Petitioner-Appellee,
v.
POLYCAST TECHNOLOGY DIVISION OF UNIROYAL TECHNOLOGY
CORPORATION, Respondent-Appellant.
 No. 1563, Docket 96-6005.
 United States Court of Appeals,
Second Circuit.
 Argued March 12, 1996.
Decided March 26, 1996.
 
 Appeal by employer from a ruling of the United States District Court for the District of Connecticut (Robert N. Chatigny, J.), in favor of the Regional Director of the National Labor Relations Board, granting a temporary injunction pursuant to § 10(j) of the National Labor Relations Act requiring the rehiring of strikers.
 Jayme L. Sophir, National Labor Relations Board, Washington, D.C. (Frederick L. Feinstein, Mary Joyce Carlson, Barry J. Kearney, Ellen A. Farrell, Corinna L. Metcalf, Washington, D.C., of counsel), for Petitioner-Appellee.
 George J. Kelly, Jr., Hartford, CT (Edward F. O'Donnell, Jr., Siegel, O'Connor, Schiff & Zangari, Hartford, CT, of counsel), for Respondent-Appellant.
 Before WALKER, McLAUGHLIN, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 Polycast Technology Division of Uniroyal Technology Corporation ("Polycast") appeals from the grant of a temporary injunction by the United States District Court for the District of Connecticut (Robert N. Chatigny, Judge ), adopting the recommendation of Magistrate Judge Donna F. Martinez. The district court granted the injunction upon the demand of the Regional Director of the National Labor Relations Board ("NLRB" or "the Board"), pursuant to § 10(j) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(j), pending the Board's final disposition of unfair labor practices charges against the company. The injunction requires Polycast to reinstate (or, if that is impossible, preferentially rehire) workers who had engaged in a strike against the company. We remand to the district court for further findings.
 
 Background
 
 2
 Teamsters, Chauffeurs, Warehousemen, and Helpers Union No. 191, International Brotherhood of Teamsters, AFL-CIO (the "Union"), is the certified collective bargaining representative of certain Polycast employees. Polycast and the Union were parties to a collective bargaining agreement covering roughly 180 employees that was in place from April 19, 1991, to April 16, 1994. In February 1994, the Union and Polycast began negotiating for a new contract, but could not reach an agreement. On May 17, 1994, Polycast declared an impasse and told the Union that it would implement the terms of its last, best offer. It did so on June 1, 1994.
 
 
 3
 Both the previous contract and Polycast's last offer had the same vacation provisions. These provided for a vacation period from June 1 to December 31 of each year; employees' requested vacation dates were to be honored, whenever possible.
 
 
 4
 On June 17, Polycast posted a notice to employees as follows:
 
 
 5
 Due to our current business conditions, specifically lagging sales, a plant vacation shutdown will commence from ... July 4th to ... July 10th, 1994. Employees will be required to take vacation time during that time period. Operations will ... resume ... on July 11, 1994. If you have any questions see your supervisor.
 
 
 6
 In accordance with this notice, Polycast closed the plant from July 4 to July 10 and placed the employees on vacation. On July 11, Union officials went to the plant and met the workers coming off vacation as they began to arrive for their work shifts--stopping them at the plant gate. They discussed various matters in relation to the contract negotiations, including that the past week's "vacation" shutdown had violated both the expired contract and the last offer. The workers immediately went on strike. Almost all of the workers joined the strike. At no time prior to commencing the strike did the Union request that Polycast bargain over the changed vacation policy.
 
 
 7
 The Union then filed unfair labor practices charges against Polycast with the NLRB. After conducting an investigation, the Regional Director determined that Polycast had refused to bargain over its change of vacation policy, and that this was an unfair labor practice. The Regional Director further found that the strike was, in part, caused by Polycast's refusal.
 
 
 8
 In September 1994, the parties reached an informal settlement agreement. Though not admitting any violation of the NLRA, Polycast agreed to reinstate its old vacation policy and reinstate the strikers in their former positions, upon receipt of an unconditional offer to return to work. Pursuant to the agreement, Polycast was required to post a notice of the settlement in the plant for sixty days.
 
 
 9
 On December 10, the Union told Polycast that its members were making an unconditional offer to return to work. Contending that its obligation to rehire under the settlement agreement lasted only sixty days after the posting of notice, and that the sixty days had elapsed on December 3, Polycast refused to reinstate roughly 150 of the 182 strikers, and instead placed them on a preferential hiring list. The Regional Director revoked the settlement agreement and filed a complaint before the NLRB claiming violations of § 8(a)(1), (3) and (5) of the Act. 29 U.S.C. § 158(a)(1), (3), (5). The complaint alleged that the employer had violated the Act, inter alia, by refusing to reinstate the striking employees and unilaterally changing the terms and conditions of employment without providing an opportunity to bargain. In addition, the Director instituted this action in the district court seeking the § 10(j) injunction at issue here, to force Polycast to rehire the strikers during the pendency of the NLRB proceedings.
 
 
 10
 Finding that there was reasonable cause to believe Polycast had violated the Act, and that an injunction would be just and proper, the magistrate judge recommended granting the Director's request for injunctive relief. As noted, the district court adopted this recommendation, and Polycast appeals.
 
 Discussion
 
 11
 We have recently reviewed the circumstances under which it is appropriate to grant an NLRB request for a § 10(j) injunction. "If the court has reasonable cause to believe that an unfair labor practice has occurred and that injunctive relief would be just and proper, it should grant appropriate relief." Silverman v. Major League Baseball Player Relations Comm., Inc., 67 F.3d 1054, 1059 (2d Cir.1995). As we have explained:
 
 
 12
 [t]he court need not make a final determination that the conduct in question is an unfair labor practice. It need find only reasonable cause to support such a conclusion. Appropriate deference must be shown to the judgment of the NLRB, and a district court should decline to grant relief only if convinced that the NLRB's legal or factual theories are fatally flawed.
 
 
 13
 Id. (citations omitted).
 
 
 14
 On the present record, we are unable to determine whether the district court was correct to find reasonable cause to support the Regional Director's conclusion that Polycast had engaged in an unfair labor practice by refusing to bargain over its change of vacation policy. Without such a finding, there is no basis for the reinstatement of the strikers under § 10(j).
 
 
 15
 Polycast's obligation to reinstate strikers depends on whether the strike protested an unfair labor practice, as opposed to economic conditions. Compare NLRB v. Mackay Radio & Tel. Co., 304 U.S. 333, 345-46, 58 S.Ct. 904, 910-11, 82 L.Ed. 1381 (1938)(no immediate obligation to rehire economic strikers) and H. & F. Binch Co. v. NLRB, 456 F.2d 357, 361 (2d Cir.1972)(same) with Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956)(unfair labor practice strikers entitled to reinstatement, even if replacement workers have been hired). The Regional Director argues that the strike was at all times an unfair labor practices strike, motivated at least in part by Polycast's refusal to bargain over the changed vacation policy, and that Polycast is therefore obliged to reinstate the strikers upon their unconditional offer to return to work. See NLRB v. Heads & Threads Co., 724 F.2d 282, 288-89 (2d Cir.1983). Polycast responds, in part, that it cannot have committed the unfair labor practice of refusal to bargain over the changed vacation policy because the union never requested that it bargain on this issue. See NLRB v. Island Typographers, Inc., 705 F.2d 44, 50-51 (2d Cir.1983).
 
 
 16
 Both parties agree that, absent the futility of such a demand, a union may not charge the employer with the unfair labor practice of refusal to bargain unless the union has actually demanded that the employer bargain. See Gulf States Mfg., Inc. v. NLRB, 704 F.2d 1390, 1397 (5th Cir.1983); Mercy Hosp. and Communications Workers of Am., 1993 WL 195854, at * 7 (N.L.R.B. May 28, 1993); Haddon Craftsmen, Inc. and Graphic Arts Int'l Union, 1990 WL 209338, at * 2-3 (N.L.R.B. Nov. 30, 1990). The Regional Director contends the union was excused from the requirement that it demand bargaining because such a demand would have been futile.
 
 
 17
 As the Union concededly failed to request bargaining on the vacation issue, a finding of futility (or at least of reasonable cause to support the Regional Director's conclusions on this issue) is a necessary prerequisite to the grant of a § 10(j) injunction. The Regional Director cannot prevail in this proceeding unless there is reasonable cause to believe Polycast committed an unfair labor practice, and cannot show an unfair labor practice unless there is reasonable cause to believe it would have been futile for the Union to request bargaining over the vacation policy change.
 
 
 18
 Neither the magistrate judge nor the district court ever addressed the issue of futility. The Regional Director contends that, as the matter was argued and the court ruled in the Director's favor, the ruling constitutes an implicit endorsement of the Director's view on the futility question. Polycast maintains that this essential point was overlooked.
 
 
 19
 In view of the fact that the circumstances supporting a finding of futility on the record before us appear to be weak, we are reluctant to conclude that the district court simply passed over this matter as one not meriting discussion.[1] We therefore remand the case to the district court for appropriate findings of fact and conclusions of law as to whether there is reasonable cause to support the Director's view that it would have been futile for the Union to request bargaining on the vacation issue.
 
 Conclusion
 
 20
 We remand for further findings, leaving it to the informed discretion of the district court whether to keep the temporary injunction in place or to revoke it pending the court's further findings. The mandate shall issue forthwith.
 
 
 
 [1]
 The Regional Director points out that the Administrative Law Judge acting in the parallel proceeding before the Board found that it would have been futile for the Union to request bargaining