13-2775-cv (L), 13-3876-cv
*Paulsen v. Remington Lodging & Hospitality, LLC*

In the

# United States Court of Appeals
### For the Second Circuit

August Term, 2013

Argued: April 23, 2014
Decided: December 12, 2014

Nos. 13-2775-cv (Lead), 13-3372-cv (Con)

JAMES G. PAULSEN, Regional Director of Region 29 of the National Labor Relations
Board, for and on behalf of the National Labor Relations Board,

*Petitioner-Appellant*,

– v. –

REMINGTON LODGING & HOSPITALITY, LLC

*Respondent-Appellee.*

No. 13-3876-cv

REMINGTON LODGING & HOSPITALITY, LLC

1

*Petitioner-Appellee,*

– v. –

JAMES G. PAULSEN, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board,

*Respondent-Appellant.*[1]

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 13 CV 2539(JFB) – Joseph F. Bianco, *Judge.*

————

Before: WINTER, PARKER, and HALL, *Circuit Judges.*

Appeal from orders of the United States District Court for the Eastern District of New York (Joseph F. Bianco, *J.*) granting in part and denying in part Petitioner's petition for a preliminary injunction under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), and denying Respondent's motion to dismiss. AFFIRMED in part, REVERSED in part, and REMANDED.

> ELIZABETH A. HEANY, Attorney (Richard F. Griffin, Jr. , General Counsel, Jennifer Abruzzo, Deputy General Counsel, Barry J. Kearny, Associate General Counsel, Jayme L. Sophir, Deputy Associate General Counsel, Elinor L. Merberg, Assistant General Counsel, Laura T. Vazquez, Deputy Assistant General Counsel, *on the brief*), National Labor Relations Board, Washington, D.C., *for Petitioner-Appellant.*

---

[1] The Clerk of the Court is directed to amend the captions on these cases to conform to the listing above.

KARL M. TERRELL, Stokes Wagner Hunt Maretz & Terrell, Atlanta, GA, *for Respondent-Appellee.*

BARRINGTON D. PARKER, *Circuit Judge*:

This opinion resolves three appeals arising from a union organizing campaign at a Hyatt Hotel operated by Remington Lodging and Hospitality, LCC ("Remington"). James G. Paulsen, a Regional Director for the National Labor Relations Board ("NLRB"), appeals from a May 23, 2013 order of the United States District Court for the Eastern District of New York (Bianco, *J.*) ("May order"). The order denied his petition under § 10(j) of the National Labor Relations Act ("NLRA" or "the Act") for an injunction prohibiting Remington from engaging in unfair labor practices and ordering the immediate reinstatement of certain discharged employees. *See* 29 U.S.C. § 160(j). He also appeals from an August 14, 2013 order that denied his motion for an injunction ordering the immediate reinstatement of the discharged employees not withstanding the fact that the court concluded that Remington had engaged in unfair labor practices ("August order"). The district court concluded in both instances that an injunction was not "just and proper," primarily because Remington had already offered, or would soon offer, reinstatement to the discharged employees. *See* Joint App'x at 91-94;[2] *Paulsen ex rel. N.L.R.B. v. Remington Lodging & Hospitality, LLC*, No. 13 Civ. 2539 (JFB) (WDW), 2013 WL 4119006, at *9-13 (E.D.N.Y. Aug. 14, 2013).

Separately, Remington appeals from the district court's August order insofar as it denied Remington's motion to dismiss Paulson's petition on the ground that the NLRB had been improperly constituted under the Recess Appointments Clause, *see N.L.R.B. v. Noel Canning*, 134 S. Ct. 2550, 2575 (2014), and enjoined Remington from engaging in unfair labor practices. For the reasons discussed below, we AFFIRM in part and REVERSE in part the orders of the district court.

---

[2] References to the Joint Appendix in this opinion are to the Joint Appendix filed in the consolidated appeals numbered 13-2775 and 13-3372.

## BACKGROUND

The following facts are drawn from the findings of the administrative law judge and of the district court. We are bound by those findings of fact unless they are clearly erroneous. *Hoffman ex rel. N.L.R.B. v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364 (2d Cir. 2001). In April 2012, Local 947, United Service Workers Union, International Union of Journeymen and Allied Trades (the "Union") began communicating with employees at a Hyatt Hotel regarding unionization. The employees of the housekeeping department were the principal focus of the campaign. Remington's management opposed the campaign and, in response, began interrogating employees about union activity, spreading misinformation regarding the union, and threatening to dismiss employees who joined. Before Remington's operation of the hotel, housekeeping services had been subcontracted to Housekeeping Staffing Services ("HSS"). When Remington arrived, it dismissed HSS. In August 2012, Remington again subcontracted the work done by its housekeeping staff to HSS, which, in turn, hired most of Remington's housekeeping employees. At the same time as Remington's former employees were working for HSS, Remington was hiring and training a separate, new housekeeping staff. In October 2012, after the training was complete, Remington cancelled the subcontract, fired its old employees and replaced them with the newly trained workers. Remington contends that it took these actions in response to persistently low customer ratings of the hotel's housekeeping and that the actions were unrelated to the Union's organizing campaign.

In late December 2012, in opposition to the campaign, Remington distributed literature to its employees regarding their compensation. Margaret Loiacono, a Remington employee, pointed out errors in the literature to a manager. She also allegedly left her work area and criticized the content of the literature to one of her co-workers. A short while later, Loiacono was discharged, ostensibly because she "ignored her duties" by being away from her work area.

4

In November 2012, the Union filed an unfair labor practice charge directed against Remington's interference with the organizing campaign. On January 15, 2013, after investigating the charge, James Paulsen, the NLRB's regional director, filed an administrative complaint against Remington. He filed an amended complaint on February 13, 2013 pursuant to § 10(j) of the NLRA. The NLRB alleged that Remington violated § 8(a)(1) of the Act by interrogating and threatening employees regarding their union activity, and §§ 8(a)(1) and (3) of the Act by subcontracting and discharging forty housekeeping employees and Loiacono to discourage them from engaging in union activities.

In March 2013, Remington began making unconditional offers of re-employment to the housekeeping employees listed in the amended complaint. The offers were made on a rolling basis as positions became available, and were awarded on a "first come-first served" basis. Remington did not offer re-employment to Loiacono.

On April 26, 2013, Paulsen filed a petition in district court seeking temporary injunctive relief requiring Remington to cease and desist from engaging in unfair labor practices and to immediately reinstate the discharged employees. Although the Board, by its Acting General Counsel, putatively authorized the petition, Remington moved to dismiss it on the ground that the Board authorization was void because the improper recess appointments of two of the three NLRB members had deprived it of a quorum.[3] Remington also asserted that the Board had not delegated authority over the petition to the General Counsel and that, absent such delegation, the petition was not authorized under the NLRA. On May 15, 2013, while the petition and motion remained pending, the ALJ issued a decision in the administrative proceeding. He found that Remington had violated the NLRA and recommended the relief sought in the § 10(j) petition.

---

[3] The NLRA provides that the Board shall have five members, and that three members shall constitute a quorum. *See* 29 U.S.C. § 153(b); *New Process Steel, L.P. v. N.L.R.B.*, 560 U.S. 674, 687-88 (2010) (without a quorum of three, the Board cannot act).

On May 22, 2013, the district court denied Paulsen's petition. The court concluded that an injunction would not be "just and proper" because of the Board's delay in seeking injunctive relief, because of the harm to the replacement employees who would be displaced by reinstated employees, and because Remington's ongoing offers of re-employment to the discharged employees substantially replicated the relief sought in the petition. Having denied relief on the merits, the court declined to rule on Remington's motion to dismiss the petition.

Paulsen appealed from the denial of the petition and, at the same time, moved in district court for an injunction pending appeal. In August 2013, the district court denied the injunction insofar as it would require the immediate reinstatement of the discharged employees. However, with Remington's consent, the court entered an order requiring Remington to cease and desist from further violations of the NLRA. The district court also denied Remington's motion to dismiss. It concluded that even if Remington were correct that the Board lacked a quorum at the time it authorized the petition, a prior, validly constituted Board had delegated the authority to authorize § 10(j) petitions to the Board's General Counsel, and Lafe Solomon, the Acting General Counsel, had properly authorized the petition in this case.

Paulsen also appealed from the denial of an injunction pending appeal and Remington cross-appealed from the denial of its motion to dismiss. In its cross-appeal, Remington contended for the first time that Solomon's appointment as Acting General Counsel violated the Federal Vacancies Reform Act ("FVRA") and, consequently, he could not have authorized Paulsen to file the § 10(j) petition. *See* 5 U.S.C. § 3345, *et seq.*

For the reasons discussed below, we affirm the district court's denial of the motion to dismiss. We conclude that because Remington's arguments concerning the FVRA were not raised below and do not implicate our subject-matter jurisdiction, they are forfeited. We also affirm the district court's denial of reinstatement to the housekeeping employees. Finally, because the district court did

6

not directly address Loiacono's status, and because she was not offered re-employment, we reverse the district court's denial of injunctive relief with respect to her and remand to the district court with instructions to order that an offer of reinstatement be extended to her.

## DISCUSSION

## I.

We turn first to the jurisdictional question raised by Remington. As noted, Remington contends for the first time on its cross-appeal that Solomon was improperly appointed under the FVRA as Acting NLRB General Counsel. In proceedings below, Remington contended only that, because a majority of NLRB board members had not been properly appointed, no quorum existed, and consequently, the § 10(j) petition was invalid. *See Noel Canning*, 134 S. Ct. 2550. However, before the petition was filed, the Board had delegated its authority to sue under § 10(j) to its General Counsel. Remington now contends that the Acting General Counsel was improperly appointed under the FVRA, and thus could not validly authorize Paulsen to bring the petition. This absence of authorization, according to Remington, deprives Paulsen of statutory standing to petition on behalf of the Board and, consequently, deprives the district court of subject matter jurisdiction. Paulsen, on the other hand, contends that because Remington failed to raise this argument below and because it does not implicate subject matter jurisdiction, it was forfeited.

Remington's argument implicates statutory standing, which our previous opinions have noted is sometimes jurisdictional.[4] However, the Supreme Court has clarified that statutory standing is not jurisdictional unless Congress says so. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Court explained that the term statutory standing is "misleading, since the absence of a

---

[4] *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 127 (2d Cir. 2003); *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994).

valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Id.* at 1387 n.4. Instead, the courts are required to examine the text of the statute in order to determine whether it has any effect on jurisdiction. *Id.* at 1388-89. This holding reinforced *Arbaugh v. Y&H Corp.*, in which the Court held that, unless Congress clearly states that a limitation on a statute's scope is jurisdictional, the limitation should be treated as non-jurisdictional in character. 546 U.S. 500, 515-16 (2006).

Here, the text of § 10(j) is inconsistent with the conclusion that Congress intended our jurisdiction to turn on whether the Board had properly authorized the petition. Section 10(j) makes clear that the district court's jurisdiction derives from the Board's filing of a petition, not from the validity of the Board's appointment of its general counsel. Section 10(j) provides that "*[u]pon the filing* of [a petition for interim relief] the court . . . *shall have jurisdiction* to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j) (emphasis added); *see also D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 351 (5th Cir. 2013) (interpreting nearly identical language in 29 U.S.C. § 160(e) in the context of a Recess Appointments Clause challenge); *Frankl v. HTH Corp.*, 650 F.3d 1334, 1346 (9th Cir. 2011) (stating that it was unlikely that Congress intended the Court's jurisdiction to turn on whether a § 10(j) petition was properly authorized).

Accordingly, we conclude that Remington's argument concerning Paulsen's statutory standing is not jurisdictional, and because Remington failed to raise the argument before the district court, it is forfeited. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008); *Harrington v. United States*, 689 F.3d 124, 137 (2d Cir. 2012). Because all of the facts and legal arguments necessary to mount a challenge to the NLRB General Counsel's appointment were available to Remington when the case was before the district court, we are not inclined to excuse the forfeiture.[5]

---

[5] In light of our conclusion that Remington's argument concerning Solomon's appointment was forfeited, we need not reach its alternative argument concerning the Board's authority to authorize the petition.

II.

We now turn to the issues raised by Paulsen's appeals: injunctive relief for the fired housekeeping staff and for Margaret Loiacono. We review a district court's decision to grant or deny injunctive relief for abuse of discretion. *Inn Credible Caterers, Ltd.*, 247 F.3d at 364. However, we remain conscious of the fact that a § 10(j) injunction is an extraordinary remedy. *Kreisberg ex rel. N.L.R.B. v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013).

The two-prong standard for § 10(j) injunctive relief is well established: *First*, the court must find reasonable cause to believe that an unfair labor practice has been committed. *Second*, the court must find that injunctive relief is just and proper. The NLRB Regional Director's determinations regarding "reasonable cause" receive significant deference. *Inn Credible Caterers*, 247 F.3d at 365. Here, Remington does not contest the district court's conclusion that reasonable cause existed to believe that unfair labor practices had been committed with respect to the housekeeping employees.

"[I]njunctive relief under § 10(j) is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo." *HealthBridge*, 732 F.3d at 141 (quoting *Inn Credible Caterers, Ltd.*, 247 F.3d at 368). The principal purpose of a § 10(j) injunction is to guard against harm to the collective bargaining rights of employees. *Inn Credible Caterers*, 247 F.3d at 369.

Remington is technically a successor-employer to HSS because it subcontracted out housekeeping functions before revoking the subcontract. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43 (1987). In the context of a successor-employer, the aim of a §10(j) injunction is, similarly, protection of the unionization process. *Inn Credible Caterers*, 247 F.3d at 364. Harm to this process is irreparable, and an injunction warranted, if the unfair labor practices of the successor-employer will delay the current unionization process or undermine it in

9

the future. *Id.* at 369. The process will be harmed if the jobs of original employees are not preserved because the process is unlikely to continue if former employees are replaced with a new workforce that is not inclined to unionize. *Id.*

The district court's analysis in its May order focused heavily on the harm to individual employees (both those discharged and their replacements) caused by the discharges and delayed reinstatements. That analysis, however, failed adequately to account for harm to unionization efforts. The court noted that the discharged employees would have a back-pay remedy if their claims were upheld by the Board, while the replacement employees would not. Joint App'x at 92. The court also contrasted the harm to the individual discharged employees from the months-long delay in reinstatement, which it considered minimal, and the more significant harm to the replacement employees who would be terminated if immediate reinstatement were ordered. *Id.* at 91-92.

The court was mistaken in the weight that it gave to these various factors. First, the rights of improperly discharged employees take priority over the rights of those hired to replace them. *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988), *overruled on other grounds by Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 19 F.3d 449 (9th Cir. 1994). Second, the main focus of a § 10(j) analysis should be on harm to organizational efforts. *Maram v. Universidad Interamericana De Puerto Rico, Inc.*, 722 F.2d 953, 959 (1st Cir. 1983). Here, the court failed to appreciate the extent to which time was of the essence in reinstating the fired employees. *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 37-38 (2d Cir. 1975). As other courts have recognized, delay is a significant concern because the absence of employees who support a union can quickly extinguish organizational efforts and reinforce fears within the workforce concerning the consequences of supporting a unionization campaign. *Pye ex rel. N.L.R.B. v. Excel Case Ready*, 238 F.3d 69, 75 (1st Cir. 2001); *N.L.R.B. v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996).

The district court discounted these harms on the grounds that (1) the employees were aware that they were being offered reinstatement; (2) the employees

10

"should be aware of the ALJ decision"; and (3) the employees "should be aware that this case is pending before this court," both of which should reassure them that they did, in fact, have a legal right to organize. Joint App'x at 92-93. This analysis is correct as far as it goes, but it fails adequately to account for crucial countervailing facts. The results of any litigation were uncertain and Remington was actively contesting the ALJ's findings before the Board. The district court itself declined to issue a cease and desist order, which likely suggested to employees that an ultimate legal victory was uncertain. And, at the time of the district court's initial ruling, there were sixteen employees remaining who were eligible for employment and who had expressed interest in returning to the hotel, but who had not been reinstated. This number constituted a sizeable portion of the total of thirty-seven eligible housekeeping employees. *Remington*, 2013 WL 4119006, at *11 (all employees had received offers, but the number of offer letters exceeded the number of open positions that the hotel would fill). In other words, because district court action in May 2013 would likely have prevented harm to the collective bargaining rights of Remington's current and discharged employees, the Board's case for an injunction was far stronger than the district court acknowledged.

However, what can be done now, after the passage of time, to rectify the harm to Remington employees is a different question. By the time this Court heard this appeal, the relevant circumstances had changed and, when reviewing cases such as this, we are not free to ignore changed circumstances. *Emhart Indus., Hartford Div. v. N.L.R.B.*, 907 F.2d 372, 379-80 (2d Cir. 1990).

The Board was seeking a reinstatement injunction over seven months after Remington extended the last reinstatement offer to a discharged housekeeping employee, eleven months after the initial denial of the § 10(j) injunction, and eighteen months after the allegedly illegal discharge. Remington's pattern of unfair labor practices and the district court's denials of the § 10(j) injunction in May and August 2013 contributed to this delay. The Board also bears responsibility for the delay. As the district court noted in May, the Board completed its investigation and filed an administrative complaint on January 15, 2013, but did not seek injunctive

relief until April 26, over four months later. After the court's May order, the Board waited six weeks to file an appeal from that order and a full two months to seek an injunction pending appeal.

While all of this was occurring, the facts that would otherwise counsel in favor of an injunction had changed. Of the thirty-seven eligible housekeeping employees identified by Paulsen in the § 10(j) petition, *all* have now been offered reinstatement with Remington. Fourteen have returned to their former positions, fifteen have declined to return, and eight have failed to respond to their offers.[6] Nothing indicates that the twenty-three non-returning employees would return if an injunction were issued. Moreover, since August 2013, a cease and desist order has been in place prohibiting the unfair labor practices identified in the January complaint. Given these changed circumstances, we conclude that an injunction is not "just and proper" at this time because we do not believe that an injunction could restore the status quo as it existed prior to the unfair labor practices. *HealthBridge*, 732 F.3d at 141.

We recognize that the "changed circumstances" doctrine risks complicating the task of fashioning appropriate relief in response to otherwise meritorious § 10(j) petitions. We certainly reject the notion that the passage of time, alone, is sufficient to justify rejecting a § 10(j) petition. On a different record, with, for example, evidence of ongoing interest in organizing that was being hindered by the absence of the discharged employees who would, in all likelihood, return if given the opportunity, injunctive relief might be warranted.

---

[6] Remington contends that Paulsen's petition for an injunction ordering immediate reinstatement would be moot once every discharged employee had been offered reinstatement because the relief sought would have already been achieved. Because we agree with Paulsen that court-ordered, immediate, en masse reinstatement is different from rolling reinstatement at the election of the employer, we disagree. While we do not find that an injunction is justified in this case at this time, the petition is not moot.

The situation with respect to Loiacono, however, differs from that of the housekeeping employees. The district court failed to consider Loiacono at all in its May order, although it did address her termination in analyzing the "reasonable cause" prong of the § 10(j) standard in its August order. *Remington*, 2013 WL 4119006, at \*9. This omission is troubling, as the district court's determination in both orders that an injunction was not "just and proper" turned heavily on the fact that Remington had made, or would shortly make, offers of re-employment to the discharged housekeeping employees. Loiacono, who was not a housekeeping employee, never received such an offer.

Remington argues that no "reasonable cause" exists for an injunction with respect to Loiacono and that too much time has now passed for one to be appropriate. We disagree. Paulsen concluded that Loiacono had been discharged as a consequence of her support for union organizing. We find this conclusion well grounded in the record, and, in any event, are required to defer to the regional director's judgment. The ALJ's finding that Loiacono was subject to unfair labor practices reinforces that conclusion. *See* Joint App'x at 76-77 (ALJ's discussion of Loiacono). In addition, we find Remington's argument regarding delay unavailing. As the district court itself recognized in both its May and August orders, delay alone is an insufficient ground on which to deny injunctive relief. *Remington*, 2013 WL 4119006, at \*9. For these reasons, we conclude that the district court erred in failing to order Loiacono's immediate reinstatement, or at a minimum, order that Remington include her in its then ongoing plan to make offers of reinstatement as positions became available.

Accordingly, we reverse the district court's determination with respect to Loiacono. We remand with instructions that the district court enter an injunction ordering that Remington offer her either immediate reinstatement or re-employment on the same terms and conditions as her prior employment as soon as an appropriate position becomes available.

**CONCLUSION**

For the reasons stated above, the orders of the district court are affirmed in part and reversed in part.