*Poor v. Amazon.com Services LLC*

In the

# United States Court of Appeals

## For the Second Circuit

_____

August Term 2023
Argued: November 16, 2023
Decided: June 12, 2024

Docket No. 22-3182

TERESA POOR, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,

*Petitioner-Appellee,*

v.

AMAZON.COM SERVICES LLC,

*Respondent-Appellant.*

_____

Before:          LIVINGSTON, *Chief Judge*, WESLEY, and CHIN, *Circuit Judges*.

_____

Amazon.com Services LLC appeals from an order of the district court granting in part temporary injunctive relief pursuant to § 10(j) of the National Labor Relations Act. The National Labor Relations Board alleges that Amazon committed an unfair labor practice in discharging one of its employees for engaging in protected concerted activity. While this charge was pending before the Board, the Board petitioned for temporary injunctive relief seeking, among other things, the employee's reinstatement. Applying this Circuit's two-part standard for § 10(j) injunctive relief, the district court determined there was "reasonable cause" to believe Amazon committed an unfair labor practice in terminating the employee. However, while the district court concluded that

ordering Amazon to cease and desist from committing certain violations of the Act was "just and proper," it concluded that ordering Amazon to reinstate the employee was not.

Because the district court did not adequately articulate why the cease-and-desist order was just and proper, particularly in light of its conclusion that the employee's reinstatement was not, the injunction is **VACATED** in part.

————————————

FOR PETITIONER-APPELLEE:        CHAD A. WALLACE (Jennifer A. Abruzzo, General Counsel, Peter Sung Ohr, Deputy General Counsel, Richard A. Bock, Associate General Counsel, Richard J. Lussier, Acting Deputy Associate General Counsel, Laura T. Vazquez, Deputy Assistant General Counsel, *on the brief*), Attorney, National Labor Relations Board, Washington, D.C.

FOR RESPONDENT-APPELLANT:        STEPHANIE SCHUSTER (Richard G. Rosenblatt, Morgan, Lewis & Bockius LLP, Princeton, NJ; Christopher J. Murphy, Morgan, Lewis & Bockius LLP, Philadelphia, PA, *on the brief*), Morgan, Lewis & Bockius LLP, Washington, D.C.

————————————

WESLEY, *Circuit Judge*:

Amazon.com Services LLC ("Amazon") appeals from an order of the United States District Court for the Eastern District of New York (Gujarati, *J.*), granting in part a petition brought by the Regional Director of the National Labor Relations Board's Region 29 (collectively, the "Board" or "NLRB") pursuant to § 10(j) of the

National Labor Relations Act, 29 U.S.C. § 160(j) (the "NLRA" or "Act"). The Board sought temporary injunctive relief relating to Amazon's discharge of one of its employees, Gerald Bryson, pending disposition by the Board of an unfair labor practice charge stemming from Bryson's termination.

The district court granted in part and denied in part the Board's petition. Applying our well-established standard for § 10(j) injunctive relief, *see, e.g.*, *Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364–65 (2d Cir. 2001),[1] the district court concluded that there was "reasonable cause" to believe that Amazon had committed an unfair labor practice when it discharged Bryson. It then concluded that an order prohibiting Amazon from discharging other employees for engaging in protected concerted activity, along with any like or related violations of the Act, was warranted. It simultaneously concluded,

---

[1] The Supreme Court recently granted certiorari to settle the split among circuit courts regarding the appropriate standard for evaluating § 10(j) petitions. *See Starbucks Corp. v. McKinney*, 144 S. Ct. 679 (Mem) (2024). The parties do not challenge our standard in this appeal. It is also well-settled that we remain bound by the prior decisions of this Court "until [they are] overruled . . . by the Supreme Court." *In re Guo*, 965 F.3d 96, 105 (2d Cir. 2020) (quoting *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016), *abrogated on other grounds by Badgerow v. Walters*, 596 U.S. 1 (2022)). In any event, for the reasons stated below, we doubt the district court's findings (or lack thereof) would pass muster under any applicable standard.

however, that ordering Bryson's reinstatement was not "just and proper" because the record reflected that Bryson's termination had not affected union organizing.

The district court abused its discretion in issuing the cease-and-desist order without adequately explaining why that relief was just and proper. Sufficient explanation was particularly necessary because the district court concluded, based on the same record, that other, closely related relief was not just and proper. We therefore vacate in part the district court's injunction.[2]

**BACKGROUND**[3]

### I.      The Labor Dispute at JFK8

Amazon has become a nationwide marketplace. It operates warehouses known as fulfillment centers to process orders, including several on Staten Island. Bryson was hired to work at one such fulfillment center, known as JFK8, in September 2018.

---

[2] The district court also ordered Amazon to post, distribute, and read its order to JKF8 employees within seven days of the district court's order. Amazon complied with this aspect of the order and concedes that any challenges to this component of the district court's order are moot. We therefore do not address it.

[3] The following facts are drawn from the administrative law judge's and the district court's findings. *See Paulsen v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 465 (2d Cir. 2014). "We are bound by those findings of fact unless they are clearly erroneous." *Id* (citation omitted).

4

The events underlying this protracted dispute began years ago in March 2020 when Bryson and several other Amazon employees began protesting COVID-19 health and safety conditions at JFK8. In April 2020, Bryson and others participated in another demonstration in the JFK8 parking lot to demand that Amazon close JFK8 for cleaning. During that protest, Bryson got into a verbal altercation with another Amazon employee, Dimitra Evans, who was present in the parking lot on her break. Their interaction escalated, with each trading insults and antagonistic comments before Evans eventually returned to work. Neither party appears to have reported the incident to Amazon. However, a manager observed it and JFK8 management launched an investigation. Bryson was ultimately charged with committing a "Category 2" violation of the Amazon Standards of Conduct for making "vulgar and derogatory comments towards" Evans. Joint App'x 59. He was suspended and later terminated on April 17, 2020 for the Category 2 violation. Evans was also charged with a Category 2 violation for using "inappropriate language" when engaging with Bryson; she, by contrast, received only a written warning. *Id.*

Bryson filed an unfair labor practice charge with the Board two months later, alleging that Amazon suspended and discharged him for engaging in

5

protected concerted activity in violation of Section 8(a)(1) of the Act.  In December 2020 and as amended in March 2021, the Board issued a complaint and notice of hearing alleging that Amazon unlawfully suspended and terminated Bryson.[4]  An administrative law judge ("ALJ") presided over a trial on the case, held over several days in 2021.

## II.      Amazon Employees Unionize

In April 2021—while Bryson's unfair labor practice charge was pending before the ALJ and approximately one year after he was terminated—Amazon employees formed a union, the Amazon Labor Union (the "ALU").  The ALU then filed a petition for a representation election in October 2021 to determine whether employees at Amazon's four Staten Island facilities, including JFK8, agreed to designate the ALU as their representative for the purposes of collective bargaining.  The ALU withdrew that petition less than a month later after it failed to garner the support necessary to support the petition.  In December 2021, the ALU filed a second representation election petition, this time to determine only

---

[4] The Regional Director's initial complaint alleged Bryson engaged in protected concerted activity on the day of the April 2020 incident with Evans.  It later amended the complaint by adding allegations that Bryson engaged in additional protected concerted activity in March 2020 when he and coworkers advocated to managers and protested for Amazon to provide greater COVID-19 safety protections.

whether employees at JFK8 sought to be represented by the ALU. The election was scheduled to take place between March 25–26 and 28–30, 2022.

### III. Initial Petition and Proceedings Before the District Court

On March 17, 2022—several days before the ALU representation election was scheduled to begin, months after the trial before the ALJ concluded but before the ALJ had rendered a decision, and nearly two years after Bryson was terminated—the Board petitioned the district court for temporary injunctive relief pursuant to § 10(j) of the Act. The Board requested that the district court order Amazon to cease and desist from engaging in certain unfair labor practices and offer to reinstate Bryson to his former position or a substantially equivalent one, pending the Board's resolution of Bryson's unfair labor charge.[5]

The Board claimed that relief was necessary, linking immediate relief in subsequent filings to the timing of the upcoming ALU election. Specifically, the Board argued that employee awareness of Bryson's termination, and Amazon's ongoing refusal to reinstate him, could chill their willingness to engage in union activity and that his reinstatement was necessary to reassure employees of their

---

[5] The Board also requested relief related to Bryon's suspensions. This request was later withdrawn at the Board's request.

rights, facilitate a fair election, and prevent Amazon from benefiting from the coercive effects of its unfair labor practice.

In the ensuing filings, the Board requested that the district court rely on the official evidentiary record developed before the ALJ in Bryson's case, plus sworn affidavits of Bryson, former Amazon employee and current ALU member Christian Smalls, and current Amazon employees and ALU members Derrick Palmer and Tristian Martinez. The Board specifically requested that the district court's evaluation of the "just and proper" prong of the § 10(j) analysis be based on the affidavits because the just and proper issue was not before the ALJ. Amazon opposed the petition, arguing, *inter alia*, that Bryson was terminated for "publicly, viciously, and profanely berat[ing]" his co-worker, Evans, and, in any event, that injunctive relief was not necessary because union organizing at JFK8 had thrived even in Bryson's absence. *King v. Amazon.com Servs LLC*, 22-cv-01479 (DG) (SJB), 2022 WL 17083273, at *4 (E.D.N.Y. Nov. 18, 2022) (quoting Amazon's Mem. of Law in Resp. to the Board's Mem. for § 10(j) Relief). Amazon alternatively requested discovery and an evidentiary hearing to address the affidavits, among other purposes.

The district court did not immediately rule on the Board's request for relief. Instead, it granted Amazon's discovery request in part, limited to the just and proper inquiry, and referred the parties to a magistrate judge for discovery management. The parties engaged in limited discovery from March 2022 through May 2022, including deposing the four affiants.

In April 2022, while discovery was ongoing, the ALU was declared the winner of the JFK8 representation election and the ALJ issued his decision in Bryson's unfair labor practice case. The ALJ held that Amazon terminated Bryson for engaging in protected concerted activity in violation of Section 8(a)(1) of the Act.

As a remedy, the ALJ recommended ordering Amazon to cease and desist from "[d]ischarging employees because of their protected concerted activity" and "[i]n any like or related manner interfering, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act." Joint App'x 73. The ALJ also recommended that Amazon, *inter alia*, offer to reinstate Bryson to his

9

former position, or one substantially equivalent. Amazon has since filed exceptions to the ALJ's decision; the case remains pending.[6]

## IV. Amended Petition and Instant Proceedings

In July 2022, the Board filed an Amended Petition at the district court's direction, identifying the temporary immediate relief it still sought in light of the successful ALU election and the ALJ's favorable decision.

The Amended Petition and related arguments largely mirrored the Board's initial petition but accounted for the ALU election victory and the ALJ's decision. While acknowledging the ALU's success, the Board maintained, however, that injunctive relief was still necessary because *reinstating Bryson* would, *inter alia*, (1) showcase the ALU's legitimacy and allow the ALU to maintain its support throughout the challenge process[7] and during future bargaining; (2) restore a key figure to JFK8 to "level the playing field" during first contract negotiations

---

[6] After the district court issued its decision and while Amazon's appeal before this Court was pending, the Board remanded Bryson's case to the ALJ for reconsideration in light of intervening Board precedent in *Lion Elastomers LLC*, 372 NLRB No. 83 (2023). On remand, the ALJ again found that Amazon unlawfully discharged Bryson. It also again recommended an order enjoining Amazon from violating certain provisions of the Act and reinstating Bryson. Amazon has filed exceptions to the ALJ's decision; the matter remains pending before the Board.

[7] Amazon filed objections to the conduct of the ALU election at JFK8; as of the parties' briefing in this appeal, the matter remained pending before the Board.

between the ALU and Amazon; (3) protect employee interest in and willingness to freely support the ALU; and (4) aid unionizing efforts at Amazon's other Staten Island fulfillment centers.

Amazon opposed the Amended Petition. It maintained that Bryson's initial COVID-19 protests were unrelated to the current ALU efforts and that Bryson had no leadership role within the ALU. It also argued that there was no evidence that Bryson's termination harmed the ALU's organizing efforts or that these efforts would be curtailed absent Bryson's reinstatement.

On November 18, 2022, the district court granted in part and denied in part the Board's Amended Petition. The district court held that reasonable cause existed to believe that Amazon committed an unfair labor practice when it discharged Bryson. The district court also ordered Amazon to, as relevant here,

> (1) [c]ease and desist from:
>     (a) [d]ischarging employees because they engaged in protected concerted activity; and
>     (b) [i]n any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the National Labor Relations Act

(collectively, the "cease-and-desist order"). *Amazon.com*, 2022 WL 17083273, at *9, 12. It declined, however, to order Amazon to offer to reinstate Bryson. *Id.* at *10–12.

11

Amazon appeals.

## DISCUSSION

**I.      Section 10(j) Injunctions**

Section 8(a)(1) of the Act provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7 of the Act.  29 U.S.C. § 158(a)(1).  Section 7 in turn provides, as relevant here, that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  *Id.* § 157.

The Board bears the ultimate responsibility of determining whether an employer has committed an unfair labor practice.  *See id.* § 160(a)–(c).  But while the Board's final determination is pending, it may petition a federal district court for an injunction pursuant to § 10(j) of the Act for "appropriate temporary relief or restraining order" as the district court "deems just and proper."  *Id.* § 160(j).

"In this Circuit, in order to issue a § 10(j) injunction, the district court must apply a two-prong test.  First, the court must find reasonable cause to believe that

12

unfair labor practices have been committed.  Second, the court must find that the requested relief is just and proper."  *Inn Credible Caterers*, 247 F.3d at 364–65 (citation omitted).  The NLRB Regional Director's conclusions regarding the first prong, reasonable cause, "receive significant deference."  *Paulsen v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 469 (2d Cir. 2014) (citing *Inn Credible Caterers*, 247 F.3d at 365).

Under the second prong, injunctive relief under § 10(j) is just and proper when "it is necessary to prevent irreparable harm or to preserve the status quo." *Inn Credible Caterers*, 247 F.3d at 368 (citation omitted).  Although this standard "preserves traditional equitable principles governing injunctive relief, we are mindful to apply them in the context of federal labor laws."  *Id.* (citing *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40 (2d Cir. 1975)).  A § 10(j) injunction is therefore designed primarily to "guard against harm to the collective bargaining rights of employees" and its "main focus . . . should be on harm to organizational efforts." *Remington Lodging*, 773 F.3d at 469 (citations omitted).

"The appropriate test for whether harm is irreparable in the context of § 10(j) cases is whether the employees' collective bargaining rights may be undermined by the asserted unfair labor practices and whether any further delay may impair

or undermine such bargaining in the future." *Kreisberg v. HealthBridge Mgmt, LLC*, 732 F.3d 131, 142 (2d Cir. 2013) (quoting *Inn Credible Caterers*, 247 F.3d at 369) (alterations adopted). Likewise, "the appropriate status quo in need of preservation is that which was in existence before the unfair labor practice occurred." *Inn Credible Caterers*, 247 F.3d at 369.

Although § 10(j) injunctions come from a unique statutory scheme arising in the labor context, a § 10(j) injunction is, like other injunctions, still "an extraordinary remedy." *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1033 (2d Cir. 1980) (internal quotation marks and citation omitted).

We review a district court's determination that relief is just and proper for an abuse of discretion, "bearing in mind . . . that a judge's discretion is not boundless and must be exercised within the applicable rules of law or equity." *Inn Credible Caterers*, 247 F.3d at 364 (internal quotation marks and citation omitted). Importantly, the district court must explain why any relief is necessary or not in light of the NLRA violations it found. *See Tekkno Lab'ys, Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir. 1991) ("[W]e will normally vacate the order if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below[.]").

14

## II. The District Court Abused its Discretion in Granting the Cease-and-Desist Order.

Of the elements needed to grant a § 10(j) injunction, Amazon challenges only the second. Amazon does not dispute the district court's conclusion that there was reasonable cause to believe that it committed an unfair labor practice when it terminated Bryson. It instead argues that the district court abused its discretion in ordering Amazon to cease and desist without finding that such relief was necessary to prevent irreparable harm or preserve the status quo—*i.e.*, just and proper. Because the district court failed to adequately support its holding that the cease-and-desist order was just and proper after concluding on the same record that ordering Bryson's reinstatement was not, we agree. [8]

Grants of injunctive relief under § 10(j) should incorporate "general equitable criteria," including "the necessity of preserving the status quo or of preventing irreparable harm." *Mego Corp.*, 633 F.2d at 1033. Here, the district

---

[8] Amazon alternatively argues that the cease-and-desist order was impermissibly vague in violation of Federal Rule of Civil Procedure 65(d) because, in Amazon's view, it merely directs Amazon to obey the law. *See* Fed. R. Civ. P. 65(d) (requiring injunctive orders to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required"). Because we vacate the cease-and-desist order for inadequate findings, we take no position on the order's compliance with Rule 65(d).

15

court's justification for the cease-and-desist order was contained in a single sentence:

> In light of the Court's finding that there is reasonable cause to believe that an unfair labor practice has been committed and in consideration of the relevant equitable principles, the Court concludes that a cease and desist order is warranted to ensure that [Amazon] refrains from engaging in unfair labor practices.

*Amazon.com*, 2022 WL 17083273, at *10.

We do not interpret the district court's language as overlooking that § 10(j) relief requires considering irreparable harm and the status quo. The district court never used the words "irreparable harm" or "status quo" in its brief analysis. But it correctly noted earlier in its opinion that "[i]njunctive relief under Section 10(j) is just and proper 'when it is necessary to prevent irreparable harm or to preserve the status quo'" and that "this standard preserves traditional equitable principles governing injunctive relief." *Amazon.com*, 2022 WL 17083273 at *7 (quoting *Inn Credible Caterers*, 247 F.3d at 368). The district court also analyzed both irreparable harm and preservation of the status quo in its analysis of Bryson-specific affirmative relief. *See id.* at *10–11. Taken in context, the district court's language strongly implies that these were the relevant equitable principles it considered.

16

Even assuming, however, that the district court implicitly used the correct equitable framework, its analysis under that framework fails to show that the circumstances in this case justify the "extraordinary remedy" of a § 10(j) injunction. *Mego Corp.*, 633 F.2d at 1033 (internal quotation marks and citation omitted). The district court summarily concluded that "the record," its reasonable cause determination, and "relevant equitable principles" justified the cease-and-desist order. *Amazon.com*, 2022 WL 17083273, at *9–10. This analysis merely "reflect[s] an understanding of this Circuit's general standard for" granting a § 10(j) injunction; it "do[es] not provide any basis on which [we] may assess whether the district court has properly exercised its discretion." *Tekkno Lab'ys*, 933 F.2d at 1097.

The district court never explained *what* in the record supported its conclusion that the cease-and-desist order was just and proper. And while we assume the district court did weigh irreparable harm and the status quo, it never explained how they justified the cease-and-desist order or why. There simply is not enough in the district court's order from which we could glean its rationale.

The Board disagrees. It maintains that the district court concluded that the cease-and-desist order was just and proper to prevent Amazon from committing

17

similar future unfair labor practices, which could suppress employee engagement and irreparably harm employee organizing and bargaining efforts. Not so; the Board's citation to the district court's order on this point refers to the district court's summary of the *Board*'s position. *See Amazon.com*, 2022 WL 17083273 at \*10 ("In this case, [the Board] argues that a cease and desist order is necessary to prevent Amazon from engaging in future unfair labor practices—conduct that might undermine employee organizing and bargaining efforts."). We cannot say that this lone reference to the Board's argument was intended as an endorsement.

Even if we could infer that the district court adopted the Board's conclusion, it still failed to explain why an immediate cease-and-desist order was necessary to mitigate this concern. Stating that a cease-and-desist order is warranted to prevent Amazon from engaging in unfair labor practices that could undermine employee organizing does not explain what justifies the order; it merely describes the order's consequences.

The Board also places undue emphasis on the district court's passing reference to "reasonable cause." It maintains that the district court's holding that reasonable cause existed to believe Amazon unlawfully terminated Bryson created an initial inference of irreparable harm because discharging open and active union

18

employees may stifle other employees' willingness to participate in protected concerted activity.

To be sure, terminating "active and open union supporters" contemporaneously with their union activity "risk[s] a serious adverse impact on employee interest in unionization" that may in appropriate circumstances justify § 10(j) relief. *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980); *see also NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 212–13 (2d Cir. 1980) (observing that discharging "union adherents" in violation of the NLRA is a "hallmark" violation that is typically considered "highly coercive"). But—even assuming that the Board is correct that an "initial inference" alone could be adequate—the district court never claimed to rely on such an inference. To the contrary, its findings regarding Bryson's termination made clear that there was no such impact.

The district court concluded that there was insufficient "concrete, non-speculative evidence" that Bryson's termination had any appreciable effect on union efforts at JFK8 before the ALU election or any "ongoing effect" on union efforts at JFK8 after the election. *Amazon.com*, 2022 WL 17083273, at *11. If anything, the district court observed, employee interest in the ALU grew "robustly" since Bryson was terminated: the ALU had an "army of organizers"

19

working at JFK8, Amazon employees openly wore ALU t-shirts and lanyards around the facility, and the ALU ultimately won the election and has continued its organizing efforts state- and nation-wide. *Id.* (internal quotation marks and citations omitted).

The district court acknowledged that Bryson testified during his deposition that he recalled one employee asking when Bryson would return to work. It also acknowledged that Palmer testified in his deposition that some employees refused to take ALU-branded merchandise out of concern that they would be fired like Bryson for openly aligning with the union. But the district court nevertheless rejected this evidence as speculative. Bryson could only recall one employee by first name who asked about his reinstatement and Palmer could not recall how many or identify with specificity employees who refused to accept ALU merchandise.

Finally, the district court noted that these findings and the fact that Bryson was terminated nearly one year before the ALU was even formed distinguished his case from others where "union activists were terminated contemporaneous with their union activity and a diminution of union support was shown to exist following the termination." *Id.*

The Board does not challenge these findings as clearly erroneous, it does not suggest that the district court overlooked evidence in the record, and it does not otherwise appeal the district court's refusal to offer Bryson reinstatement. Instead it attempts to reconcile these positions with the district court's conclusory decision to implement the cease-and-desist order by claiming that the district court was entitled to weigh the same evidence differently for different types of relief. The Board's theory appears to be that the district court could, within the bounds of its discretion, require less compelling evidence of irreparable harm or threat to the status quo than would be required to justify Bryson's reinstatement.

True, some forms of relief in the traditional preliminary injunction context require "more demanding" showings of *both* the likelihood of success and irreparable harm.[9] We need not, however, decide whether or when such a bifurcated burden standard is appropriate in this type of § 10(j) analysis; nothing in the district court's decision suggests it applied a heightened standard to

---

[9] *See, e.g., Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (distinguishing between "heightened standard" for so-called "mandatory" injunctions that require the non-movant to "take some action" or "alter" the status quo rather than "prohibitory" injunctions which require the non-movant to "refrain from taking some action" or "maintain" the status quo (internal quotation marks and citations omitted)).

Bryson's reinstatement compared to the cease-and-desist component of its analysis. At bottom, the Board seeks to graft reasoning onto the district court's opinion that the district court simply did not employ.

The district court's brevity is perhaps understandable, given that the Board's cease-and-desist arguments below were largely relegated to a handful of sentences in its motion papers. We are also mindful that we typically do not require "punctilious detail or slavish tracing of the claims issue by issue and witness by witness." *Fair Hous. in Huntington Comm. v. Town of Huntington, N.Y.*, 316 F.3d 357, 364 (2d Cir. 2003) (alteration adopted and internal quotation marks and citations omitted).

But the importance of adequate findings is essential to facilitate appellate review, particularly in the context of injunctive relief. *See Alleyne v. N.Y. State Educ. Dep't*, 516 F.3d 96, 101 (2d Cir. 2008) (per curiam). The district court's explanation for granting the cease-and-desist order is insufficient to assure us that it properly exercised its discretion, an error that was compounded by the seemingly contradictory, unchallenged findings it did make regarding Bryson's reinstatement.

*     *     *

As the district court aptly observed, this is a "unique" case. *Amazon.com*, 2022 WL 17083273, at \*11. The Board first petitioned for relief two years after Bryson's termination; one year after the ALU was formed; and mere days before the representation election that largely motivated its decision to petition for relief in the first place was scheduled to take place. When the district court finally ruled on the Board's amended petition, it rejected the Board's primary request because the record did not establish that the single unfair labor practice at issue caused irreparable harm or affected the status quo, a holding the Board does not appeal. Notwithstanding this, the district court then ordered ancillary relief without explanation.

It is this combination of factors that compels vacatur. We by no means suggest that cease-and-desist orders can never be appropriate in resolving labor disputes, nor do we purport to restrict a district court's flexibility in fashioning equitable relief. Rather, our holding is narrow: the absence of explanation justifying relief, coupled with the district court's explicit, undisputed findings in rejecting the request to order Bryson's reinstatement, cast serious doubt on the

23

propriety of this cease-and-desist order. The district court's injunction is therefore vacated as to parts (1)(a) and (1)(b).[10]

## CONCLUSION

For the reasons set forth above, the district court's injunction is **VACATED** as to parts 1(a)–(b), which require Amazon to

(1) Cease and desist from:

   a. Discharging employees because they engaged in protected concerted activity; and

---

[10] Curiously, the Board does not ask, in the event we agree with Amazon that the district court's reasoning on the cease-and-desist order was inadequate, that we remand for further analysis. The Board is a sophisticated party statutorily tasked with the power to request temporary relief related to unfair labor practices; we presume it was aware of remand relief. *See, e.g.*, *Hoffman v. Polycast Tech. Div. of Uniroyal Tech. Corp.*, 79 F.3d 331, 334 (2d Cir. 1996) (remanding for "appropriate findings of fact and conclusions of law as to whether there [was] reasonable cause" supporting § 10(j) injunction). We therefore decline to remand *sua sponte*. In any event, the district court's language in declining to order Bryson's reinstatement strongly suggests it concluded the record showed inadequate—if not *no*—evidence of irreparable harm or a need to return to or preserve the status quo.

Relatedly, the Board also argues for the first time in a Rule 28(j) letter dated November 21, 2023, *see* Fed. R. App. P. 28(j), that we may nevertheless determine the propriety of the cease-and-desist order by reviewing the record ourselves. This argument is forfeited; we decline to address it. *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam) (noting that "a party is strictly forbidden from making additional arguments or from attempting to raise points clarifying its brief or oral argument" in Rule 28(j) letters). Further, the Board's argument that the "evidence," coupled with a citation to the fact section of its brief, made "some employees" afraid to openly engage in protected concerted activities is both conclusory and undermined by the unchallenged findings of the district court that this evidence, as discussed above, was vague and speculative.

24

b. In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the National Labor Relations Act.